ARLENE GORDON-OLIVER, P.C.
Attorneys for the Debtor
199 Main Street, Suite 203
White Plains, New York 10601
(914) 683-9750

*Hearing Date: October 22, 2013*
*Hearing Time: 10:00 a.m.*

Arlene Gordon-Oliver, Esq.

UNITED STATES BANKUPTCY COURT
EASTERN DISTRICT OF NEW YORK
———————————————————X

In re Glenroy Paul

Chapter 13
Case No. 1-13-44918-cec

Debtor
———————————————————X

## DECLARATION IN OPPOSITION TO TRUSTEE MOTION TO DISMISS

State of New York    )
                     ) :
County of Kings      )

1. I, Glenroy Paul, the above captioned debtor (the "Debtor") declares under penalty of perjury that the following:

2. I reside at 974 Rutland Road, Apt 3F, Brooklyn, New York 11212 (the "Property").

3. On August 12, 2013 I filed the above Chapter 13 case and Michael J. Macco was duly appointed and qualified as Chapter 13 Trustee (the "Trustee").

4. On or about September 26, 2013, the Trustee filed a motion seeking to dismiss my Chapter 13 case based upon the following.

5. Failure to produce a lease agreement for $4,500. I have 3 tenants in my property and all three lease agreements are annexed hereto as Exhibit A. I do not have a lease that totals $4,500.00.

6. Failure to Amend Schedule E. Annexed hereto as Exhibit B is an Amended Schedule E.

7. Failure to produce a list of business assets and their fair market value including aging receivables. There are no receivables due. Annexed hereto as Exhibit C is an Affidavit with a list of business assets attached with a combined fair market value of $1000.

8. Failure to Amend my Chapter 13 Plan. Annexed hereto as Exhibit D is an Amended Chapter 13 Plan.

9. Failure to provide paystubs with the Third Party Affidavit of Contribution from my wife. Attached hereto as Exhibit E is a copy of the Third Party Affidavit of Contribution from

1

my wife with her paystubs attached.

10. Failure to prepare monthly operating reports pursuant to the United States Trustee Guidelines. I am in the process of preparing my monthly operating reports which will be filed by the end  the week.

WHEREFORE, I respectfully request that the Court grant me an opportunity to continue my Chapter 13 case.

_/s/ Glenroy Paul_____

Glenroy Paul

Dated: October 15, 2013

# EXHIBIT A

Landlord and Tenant agree to lease the Premises at the rent and for the term stated:

**PREMISES:** 974 Rutland Road-Brooklyn, NY 11212    **UNIT:** Apt. 2R

**LANDLORD:** Mr. Paul Glenroy    **TENANT:** Ms. Sherry Peters

974 Rutland Road-Bklyn, NY 11212    974 Rutland Road-Brooklyn, NY 11212

**Date of Lease:** January 31, 2013    **Annual Rent:** $ 15,600.00

**Lease Term:** Two Years    **Monthly Rent:** $ 1,300.00

**Commencement Date:** February 1, 2013    **Security Deposit:** $ 1,300.00

**Termination Date:** January 31, 2015

### 1. Use and Occupancy

The Unit may only be used strictly for residential purposes and may only be occupied by Tenant and Tenant's spouse and children.

### 2. Inability to Give Possession

The failure of Landlord to give Tenant possession of the Unit on the Commencement Date shall not create liability for Landlord. In the event that possession of the Unit is not delivered on the Commencement Date, Monthly Rent hereunder shall begin on the date that possession of the Unit is delivered to Tenant and shall be prorated for that portion of the month in which possession is delivered.

### 3. Rent

Tenant shall pay Monthly Rent in full on the first day of each month of the Lease. Monthly Rent shall be paid in advance with no notice being required from Landlord. Tenant shall not deduct any sums from the Monthly Rent unless Landlord consents thereto in writing.

Upon signing this Lease, Tenant shall pay Landlord the first Monthly Rent due and the Security Deposit. The entire amount of rent due for the Lease Term is due upon signing this Lease; however, Landlord consents to the Tenant paying same in monthly installments provided there exists no defaults by Tenant under the terms of this Lease.

Additional Rent may include, but is not limited to any additional insurance premiums and/or expenses paid by Landlord which are chargeable to Tenant as stated hereinafter. Additional Rent is due and payable with the Monthly Rent for the next month after Tenant receives notice form Landlord that Additional Rent is due and payable.

### 4. Condition of Unit

Tenant agrees that Tenant is accepting the Unit in its "as is" condition. Tenant further acknowledges that Tenant has thoroughly inspected the Unit and has found the Unit to be in good order and repair and that the appliances, if any, are in good operating condition. Tenant further states that Tenant knows how to operate the appliances and shall do so in accordance with the manufacturer's instructions.

### 5. Security

The Security Deposit is due upon the Tenant signing this Lease. The Security Deposit shall not be used for the payment of Monthly Rent unless agreed to, in writing, by Landlord and Tenant. Landlord shall deposit the Security Deposit in a bank insured by the FDIC and same will accrue interest if mandated by law. Within ten (10) days after Tenant surrenders possession of the Unit at the expiration of the Lease Term, Landlord shall return the Security Deposit, less any cost of repairs as authorized by this Lease, to Tenant at an address Tenant provides.

### 6. Services and Utilities

Tenant is responsible for paying all electric, gas, water, telephone and any other utilities allocated to the Unit. Use of a dishwasher, clothes washer and dryer machines, freezer, air purifier, portable heater, air conditioner or similar appliances is prohibited without Landlord's written consent.

Landlord will supply (a) heat, in such quantity and for such time as mandated by law, (b) hot and cold water, (c) air conditioning, if already existing in the Unit, (d) garbage removal from the Premises (the "Services"). If the Services are temporarily interrupted due to an accident, emergency and/or repairs, Tenant's obligation to pay rent, in full, shall not be affected thereby.

Landlord will also supply a refrigerator, stove/oven, dishwasher, window air conditioning unit, clothes washer and clothes dryer (the "Appliances"). Any damage to the Appliances which is caused by the willful and/or negligent acts of Tenant may be repaired by Landlord, the cost of which shall be Additional Rent.

### 7. Furnishings

The Unit is being delivered (furnished) (unfurnished). If furnished, Landlord has given an inventory of the furnishings which inventory has been signed by Tenant and Landlord. Tenant acknowledges that said furnishings are in good condition and Tenant accepts same in "as is" condition.

### 8. Repairs and Alterations

Tenant shall maintain all appliances, equipment, furniture, furnishings and other personal property included under this Lease and, upon the surrender of the Unit on the Termination Date, Tenant shall surrender same to Landlord in the same condition as received, reasonable wear and tear excepted. Tenant shall make all repairs which become necessary due to Tenant's acts and/or negligence. If Tenant does not make such repairs, Landlord may do so, the cost of which shall be Additional Rent. In the event that Tenant defaults under the terms of this Paragraph 9, Landlord may make necessary repairs or replacement, the cost of which shall be deducted from the Security Deposit.

Tenant shall not make any alterations, additions, modifications and/or changes to the Unit during the Lease Term.

### 9. Maintenance of Unit

Tenant shall maintain the Unit in a neat, clean and presentable condition.

### 10. Pets

Pets of any kind or nature (shall) (shall not) be allowed in the Unit.

### 11. Damage, Fire or Other Catastrophe

In the case of fire damage or other damage to the Unit not caused by Tenant, Tenant shall give Landlord immediate notice of same. Upon receipt of such notice, Landlord may either (a) repair the Unit or (b) terminate

If the damage to the Premises or the Unit renders the Unit uninhabitable, Landlord shall give notice to Tenant, after repairs are made, of the date on which the Unit may be reoccupied. Monthly Rent for the period that Tenant can not occupy the Unit because of the damage shall be forgiven.

In the event that Landlord terminates this Lease because of the damage, Landlord shall give Tenant three (3) days notice of Landlord's intent to so terminate, in which event, Monthly Rent shall be due for the period up to the date the Premises or the Unit incurred the damage.

Notwithstanding the provisions of Section 227 of the New York Real Property Law, if the building in which the Unit is situated is substantially damaged by fire or other catastrophe (the "Occurrence"), Landlord has the absolute right to demolish, renovate or rebuild the Premises. Landlord may cancel this Lease, in such event, upon thirty (30) days written notice to Tenant of Landlord's intent, which notice shall include the date on which the Lease terminates, which shall, in no event, be less than thirty (30) days from the date of said notice. By canceling this Lease in accordance with the terms of this Paragraph, Landlord is not obligated to repair, renovate or rebuild the Premises. Monthly Rent and Additional Rent shall be paid by Tenant up to the date of the Occurrence.

### 12. Liability

Landlord shall not be liable for any loss, damage or expense to any person or property except if such loss is caused by the willful acts of Landlord.

Tenant shall be liable for the acts of Tenant, Tenant's family, guests and/or invitees. Landlord's cost and expense in repairing any such damage or from any claim resulting from such acts shall be billed as Additional Rent and shall be paid by Tenant to Landlord.

### 13. Landlord's Entry

Except in an emergency, for the purposes of repair, inspection, extermination, installation or repair of any system, utility or appliance or to do any work deemed necessary by Landlord, Landlord may enter the Unit on reasonable notice and at reasonable times. Upon giving such notice, Landlord may also enter the Unit to show the Unit to prospective purchasers, lenders or other persons deemed appropriate and necessary by Landlord. During the last three (3) months of the Term of this Lease, Landlord may enter the Unit to show the Unit to prospective tenants.

### 14. Assigning or Subletting

This Lease may not be assigned by Tenant nor shall Tenant sublet the Unit.

### 15. Subordination

This Lease and Tenant's rights hereunder are subject and subordinate to all existing and future leases for the land on which the Premises stand, to all mortgages on said leases and/or to the Premises and/or the land and all renewals, modifications and extensions thereof. Upon request by Landlord, Tenant shall execute any certificate to this effect.

### 16. Landlord's Consent

If, under the terms of this Lease, the consent of Landlord is required, such consent shall not be unreasonably withheld.

### 17. Keys, Locks

Tenant shall give Landlord keys to all locks for the Unit. Tenant shall not change any locks or add any locks to the Unit without obtaining Landlord's consent, and if given, Tenant shall provide keys to Landlord for these locks.

### 18. Signs

Tenant shall not place any signs on the Premises or upon the grounds on which the Premises stand or in the Unit so as to be seen from outside the Unit.

Landlord shall have the right to place or cause to be placed on the Premises and/or upon the grounds on

### 19. Compliance with Authorities

Tenant shall, at its own cost and expense, comply promptly with all laws, rules, ordinances and directions of governmental and/or municipal authorities, insurance carriers and/or homeowners' associations.

### 20. Tenant's Defaults, Landlord's Remedies

A. Landlord must give Tenant notice of default (except for a default in the payment of Monthly Rent and/or Additional Rent) and Tenant, upon receipt of such notice must cure the default within the time stated hereinafter:

1. a default under Paragraphs 8, 9, 10, 11, 12, 14, 17 or 21 of this Lease, ten (10) days;

2. a default under Paragraph 30 of this Lease, thirty (30) days.

B. In the event that Tenant fails to cure a default within the time stated therefore, Landlord may terminate this Lease. In such event, Landlord shall give Tenant notice stating the date upon which this Lease shall terminate, such date being not less than three (3) days after the date of such notice at which time this Lease shall then terminate. Tenant shall be responsible for Monthly Rent and Additional Rent as set forth in this Lease up to the date of termination.

C. If this Lease is terminated or Tenant vacates the Unit prior to the Termination Date, Landlord may enter the Unit and remove Tenant and any person or property and/or commence summary proceedings for eviction. The aforesaid actions are not the sole remedies of Landlord.

D. If this Lease is cancelled or Landlord takes back the Unit

1. Monthly Rent and Additional Rent for the unexpired portion of the Term immediately becomes due and payable. In addition, any cost or repair expended by Landlord shall be the obligation of Tenant and shall be deemed Additional Rent.

2. Landlord may re-rent the Unit and anything in it for any term and at any rental and any cost in connection therewith shall be borne by Tenant which may include, but is not limited to the cost of repairs, decorations, preparation for renting, broker's fees, advertising costs and attorney's fees. Any rent recovered by Landlord for the re-renting of the Unit shall reduce the amount of money that Tenant owes to Landlord.

### 21. Landlord's Rules

Tenant shall comply with these rules (the "Rules") at all times. If there is a change in the rules, Landlord will give Tenant notice of same. Landlord shall not be liable to Tenant for another Tenant's violation of the Rules. The rights afforded under the following Rules are for the sole benefit of Landlord:

(a) the quiet enjoyment of other tenants shall not be interfered with;

(b) sounds, odors and lights which are annoying to other tenants are not allowed;

(c) floors within the Unit must be covered over 70% of the area of each room except for the bathroom and kitchen;

(d) all posted rules must be followed;

(e) smoking is not permitted in the Unit or hallways;

(f) All flammable or dangerous items may not be kept or stored in the Unit;

(g) no one is allowed access to or the enjoyment of the roof;

(h) nothing shall be placed on or attached to the fire escapes, windows, doors or in the hallways or common areas;

(i) elevators, if any, are to be used by tenants and their guests only. Bicycles are not allowed in the elevators. Tenants and their guests are not to leave any garbage, trash and/or debris in the elevators;

(j) moving of furniture in and out of the Unit must be scheduled with the Landlord;

(k) all deliveries must be made by means of the service entrance, if any;

(l) laundry machines, if provided, may be used at tenants' risk and cost, may only be used at reasonable

04/24/2013    12:41                                                          (FAX)                    P.028/047

(m) cleaning of the exterior of the windows from the outside is strictly forbidden;

(n) if parking is provided, improperly parked vehicles may be immediately removed at tenant's cost;

(o) tenant may not leave any baby carriages/strollers, bicycles, boxes, cartons and/or any items in hallways;

(p) tenant shall use its best efforts to conserve energy and water;

(q) hot plates or means of cooking other than the stove are not permitted.

### 22. Warranty of Habitability

Landlord warrants that the Unit and Premises are suitable for living and that they are free from any condition that is dangerous to health, life and/or safety.

### 23. Limitation of Recovery

Should Tenant obtain a judgment or other remedy from a court of competent jurisdiction for the payment of money to Landlord, Tenant is limited to the Landlord's interest in the Premises for the collection of same.

### 24. Construction and Demolition

Construction and/or demolition may be done in or near the Premises and if same interferes with the ventilation, view and/or enjoyment of the Unit, Tenant's obligations under this Lease shall, in no way, be affected.

### 25. Demolition of Premises

Should Landlord deem it necessary to demolish the Premises, Landlord may terminate this Lease upon six (6) months written notice to Tenant provided such notice is given to all other tenants in the Premises. In such event, Tenant shall surrender the Unit to Landlord upon such date as set forth in the notice.

### 26. Terraces and Balconies

If there is a terrace or balcony as an adjunct to the Unit, such terrace or balcony is subject to the terms of this Lease.

Tenant shall keep the terrace or balcony clean, clear of snow, ice, garbage and other debris. No alteration or additions may be made to the terrace or balcony. Tenant's property may not be stored on the terrace or balcony. Cooking on the terrace or balcony is prohibited.

Tenant shall maintain the terrace or balcony in good condition and make all repairs at Tenant's cost, except those of a structural nature which is the responsibility of Landlord.

### 27. Common Recreational Areas

If applicable, Landlord may give Tenant use of any playground, pool, parking or other areas, the use of which will be at Tenant's own risk and Tenant shall pay any charge imposed by Landlord for such use. Landlord's permission to use these areas may be revoked at any time.

### 28. Landlord's Employees

The employees of Landlord shall not perform any work for Tenant at Tenant's request. Such employees may not do any personal chores of Tenant.

### 29. Condemnation

If any or part of the Premises is taken or condemned by any governmental authority, Landlord may cancel this Lease on notice to Tenant and Tenant's rights hereunder shall end as of the date the authority takes title to the Premises which cancellation date can not be less than thirty (30) days from the date of Landlord's notice. Tenant shall be liable for Monthly Rent and Additional Rent to the date of cancellation and shall make no claim for the unexpired term of the Lease. Any award for the condemnation is the property of Landlord and Tenant assigns to Landlord any and all rights, interest and/or claim in and to such award.

### 30. Bankruptcy

Should Tenant file a voluntary petition in bankruptcy or an involuntary petition is filed against Tenant, or should Tenant assign any property fro the benefit of

this Lease upon thirty (30) days written notice to Tenant.

### 31. Notices

Any notice to be given under this Lease shall be in writing addressed to the party at the addresses set forth herein by certified mail or overnight courier service. Notice by Landlord to one named Tenant shall be deemed given to all Tenants and occupants of the Unit. Each party hereto shall accept notices sent by the other. Any change of address by one party must be given, by notice, to the other. Notice shall be deemed given when posted or delivered to the overnight courier service.

### 32. Waiver of Jury Trial, Set-Off or Counterclaim

The parties hereto waive trial by jury in all matters except for personal injury or property damage claims. In a summary proceeding for eviction, Tenant waives Tenant's right to any set-off and/or counterclaim.

### 33. Broker

Tenant states that _____ is the sole Broker who showed the Unit to Tenant. Tenant shall hold harmless and indemnify Landlord fro any monies expended by Landlord should Tenant's statement herein be untrue.

### 34. Inability of Landlord to Perform

If Landlord is unable to perform any of its obligations to be performed hereunder due to governmental orders, labor strife or inability to secure goods or materials, through no fault on the part of Landlord, this Lease shall not be terminated or cancelled and such inability shall not impact upon Tenant's obligations hereunder.

### 35. Illegality

Should any part of this Lease be deemed illegal, the remaining portions of this Lease shall not be affected thereby and shall remain in full force and effect.

### 36. Non-Disturbance

So long as Tenant pays the Monthly Rent and Additional Rent and there exists no defaults under any of the terms of this Lease, Tenant may peacefully occupy the Unit for the Lease Term.

### 37. Non-Waiver

Any failure by Landlord to insist upon Tenant's full compliance with the terms of this Lease and/or to enforce such terms shall not be deemed to be a waiver of Landlord's rights to insist upon or so enforce the terms of this Lease at a future date.

### 38. Parties Bound

This Lease is binding upon Landlord and Tenant and their respective assignees and/or successors in interest.

### 39. Paragraph Headings

Paragraph headings are for reference only.

### 40. Effectiveness

This Lease shall become effective as of the date when Landlord delivers a fully executed copy hereof to Tenant or Tenant's attorney.

### 41. Entire Agreement

Tenant states that Tenant has read this Lease and that it fully incorporates all understandings, representations and promises made to Tenant by Landlord and/or Landlord's agent and that this Lease supercedes all prior representations, agreements and promises, whether oral or written.

### 42. Amendments

This Lease may only be changed or amended in a writing signed by the parties hereto.

### 43. Riders

Additional terms are contained in the riders annexed hereto and designated Rider.

Unit to Landlord vacant, in good condition and broom clean. Prior to such delivery, Tenant shall have vacated

damages caused by Tenant and return the Unit in the same condition as received, reasonable wear and tear excepted.

This Lease has been entered into as of the Date of Lease.

LANDLORD

*Kenny Paul*
Mr. Paul Glenroy

TENANT

*Sherry Peters*
Ms. Sherry Peters

# APARTMENT LEASE

Landlord and Tenant agree to lease the Premises at the rent and for the term stated:

PREMISES: 974 Rutland Road-Brooklyn, NY 11212    UNIT: Apt. 2F

LANDLORD: Mr. Paul Glenroy    TENANT: Mr. Matthew Walker

974 Rutland Road-Bklyn, NY 11212    974 Rutland Road-Brooklyn, NY 11212

Date of Lease: May 31, 2012    Annual Rent: $ 13,200.00

Lease Term: Two Years    Monthly Rent: $ 1,100.00

Commencement Date: June 1, 2012    Security Deposit: $ 1,100.00

Termination Date: May 31, 2014

**1. Use and Occupancy**
The Unit may only be used strictly for residential purposes and may only be occupied by Tenant and Tenant's spouse and children.

**2. Inability to Give Possession**
The failure of Landlord to give Tenant possession of the Unit on the Commencement Date shall not create liability for Landlord. In the event that possession of the Unit is not delivered on the Commencement Date, Monthly Rent hereunder shall begin on the date that possession of the Unit is delivered to Tenant and shall be prorated for that portion of the month in which possession is delivered.

**3. Rent**
Tenant shall pay Monthly Rent in full on the first day of each month of the Lease. Monthly Rent shall be paid in advance with no notice being required from Landlord. Tenant shall not deduct any sums from the Monthly Rent unless Landlord consents thereto in writing.
Upon signing this Lease, Tenant shall pay Landlord the first Monthly Rent due and the Security Deposit. The entire amount of rent due for the Lease Term is due upon signing this Lease; however, Landlord consents to the Tenant paying same in monthly installments provided there exists no defaults by Tenant under the terms of this Lease.
Additional Rent may include, but is not limited to any additional insurance premiums and/or expenses paid by Landlord which are chargeable to Tenant as stated hereinafter. Additional Rent is due and payable with the Monthly Rent for the next month after Tenant receives notice form Landlord that Additional Rent is due and payable.

**4. Condition of Unit**
Tenant acknowledges that Tenant is accepting the Unit in its "as is" condition. Tenant further acknowledges that Tenant has thoroughly inspected the Unit and has found the Unit to be in good order and repair and that the appliances, if any, are in good operating condition. Tenant further states that Tenant knows how to operate the appliances and shall do so in accordance with the manufacturer's instructions.

**5. Security**
The Security Deposit is due upon the Tenant signing this Lease. The Security Deposit shall not be used for the payment of Monthly Rent unless agreed to, in writing, by Landlord and Tenant. Landlord shall deposit the Security Deposit in a bank insured by the FDIC and same will accrue interest if mandated by law. Within ten (10) days after Tenant surrenders possession of the Unit at the expiration of the Lease Term, Landlord shall return the Security Deposit, less any cost of repairs as authorized by this Lease, to Tenant at an address Tenant provides.

**6. Services and Utilities**
Tenant is responsible for paying all electric, gas, water, telephone and any other utilities allocated to the Unit. Use of a dishwasher, clothes washer and dryer machines, freezer, air purifier, portable heater, air conditioner or similar appliances is prohibited without Landlord's written consent.
Landlord will supply (a) heat, in such quantity and for such time as mandated by law, (b) hot and cold water, (c) air conditioning, if already existing in the Unit, (d) garbage removal from the Premises (the "Services"). If the Services are temporarily interrupted due to an accident, emergency and/or repairs, Tenant's obligation to pay rent, in full, shall not be affected thereby.
Landlord will also supply a refrigerator, stove/oven, dishwasher, window air conditioning unit, clothes washer and clothes dryer (the "Appliances"). Any damage to the Appliances which is caused by the willful and/or negligent acts of Tenant may be repaired by Landlord, the cost of which shall be Additional Rent.

**7. Furnishings**
The Unit is being delivered (furnished) (unfurnished). If furnished, Landlord has given an inventory of the furnishings which inventory has been signed by Tenant and Landlord. Tenant acknowledges that said furnishings are in good condition and Tenant accepts same in "as is" condition.

**8. Repairs and Alterations**
Tenant shall maintain all appliances, equipment, furniture, furnishings and other personal property included under this Lease and, upon the surrender of the Unit on the Termination Date, Tenant shall surrender same to Landlord in the same condition as received, reasonable wear and tear excepted. Tenant shall make all repairs which become necessary due to Tenant's acts and/or negligence. If Tenant does not make such repairs, Landlord may do so, the cost of which shall be Additional Rent. In the event that Tenant defaults under the terms of this Paragraph 9, Landlord may make necessary repairs or replacement, the cost of which shall be deducted from the Security Deposit.
Tenant shall not make any alterations, additions, modifications and/or changes to the Unit during the Lease Term.

**9. Maintenance of Unit**
Tenant shall maintain the Unit in a neat, clean and presentable condition.

**10. Pets**
Pets of any kind or nature (shall) (shall not) be allowed in the Unit.

**11. Damage, Fire or Other Catastrophe**
In the case of fire damage or other damage to the Unit not caused by Tenant, Tenant shall give Landlord immediate notice of same. Upon receipt of such notice, Landlord may either (a) repair the Unit or (b) terminate

If the damage to the Premises or the Unit renders the Unit uninhabitable, Landlord shall give notice to Tenant, after repairs are made, of the date on which the Unit may be reoccupied. Monthly Rent for the period that Tenant can not occupy the Unit because of the damage shall be forgiven.

In the event that Landlord terminates this Lease because of the damage, Landlord shall give Tenant three (3) days notice of Landlord's intent to so terminate, in which event, Monthly Rent shall be due for the period up to the date the Premises or the Unit incurred the damage.

Notwithstanding the provisions of Section 227 of the New York Real Property Law, if the building in which the Unit is situated is substantially damaged by fire or other catastrophe (the "Occurrence"), Landlord has the absolute right to demolish, renovate or rebuild the Premises. Landlord may cancel this Lease, in such event, upon thirty (30) days written notice to Tenant of Landlord's intent, which notice shall include the date on which the Lease terminates, which shall, in no event, be less than thirty (30) days from the date of said notice. By canceling this Lease in accordance with the terms of this Paragraph, Landlord is not obligated to repair, renovate or rebuild the Premises. Monthly Rent and Additional Rent shall be paid by Tenant up to the date of the Occurrence.

### 12. Liability

Landlord shall not be liable for any loss, damage or expense to any person or property except if such loss is caused by the willful acts of Landlord.

Tenant shall be liable for the acts of Tenant, Tenant's family, guests and/or invitees. Landlord's cost and expense in repairing any such damage or from any claim resulting from such acts shall be billed as Additional Rent and shall be paid by Tenant to Landlord.

### 13. Landlord's Entry

Except in an emergency, for the purposes of repair, inspection, extermination, installation or repair of any system, utility or appliance or to do any work deemed necessary by Landlord, Landlord may enter the Unit on reasonable notice and at reasonable times. Upon giving such notice, Landlord may also enter the Unit to show the Unit to prospective purchasers, lenders or other persons deemed appropriate and necessary by Landlord. During the last three (3) months of the Term of this Lease, Landlord may enter the Unit to show the Unit to prospective tenants.

### 14. Assigning or Subletting

This Lease may not be assigned by Tenant nor shall Tenant sublet the Unit.

### 15. Subordination

This Lease and Tenant's rights hereunder are subject and subordinate to all existing and future leases for the land on which the Premises stand, to all mortgages on said leases and/or the Premises and/or the land and all renewals, modifications and extensions thereof. Upon request by Landlord, Tenant shall execute any certificate to this effect.

### 16. Landlord's Consent

If, under the terms of this Lease, the consent of Landlord is required, such consent shall not be unreasonably withheld.

### 17. Keys, Locks

Tenant shall give Landlord keys to all locks for the Unit. Tenant shall not change any locks or add any locks to the Unit without obtaining Landlord's consent, and if given, Tenant shall provide keys to Landlord for these locks.

### 18. Signs

Tenant shall not place any signs on the Premises or upon the grounds on which the Premises stand or in the Unit so as to be seen from outside the Unit.

Landlord shall have the right to place or cause to be placed on the Premises and/or upon the grounds on

### 19. Compliance with Authorities

Tenant shall, at its own cost and expense, comply ' promptly with all laws, rules, ordinances and directions of governmental and/or municipal authorities, insurance carriers and/or homeowners' associations.

### 20. Tenant's Defaults, Landlord's Remedies

A. Landlord must give Tenant notice of default (except for a default in the payment of Monthly Rent and/or Additional Rent) and Tenant, upon receipt of such notice must cure the default within the time stated hereinafter:

1. a default under Paragraphs 8, 9, 10, 11, 12, 14, 17 or 21 of this Lease, ten (10) days;

2. a default under Paragraph 30 of this Lease, thirty (30) days.

B. In the event that Tenant fails to cure a default within the time stated therefore, Landlord may terminate this Lease. In such event, Landlord shall give Tenant notice stating the date upon which this Lease shall terminate, such date being not less than three (3) days after the date of such notice at which time this Lease shall then terminate. Tenant shall be responsible for Monthly Rent and Additional Rent as set forth in this Lease up to the date of termination.

C. If this Lease is terminated or Tenant vacates the Unit prior to the Termination Date, Landlord may enter the Unit and remove Tenant and any person or property and/or commence summary proceedings for eviction. The aforesaid actions are not the sole remedies of Landlord.

D. If this Lease is cancelled or Landlord takes back the Unit

1. Monthly Rent and Additional Rent for the unexpired portion of the Term immediately becomes due and payable. In addition, any cost or repair expended by Landlord shall be the obligation of Tenant and shall be deemed Additional Rent.

2. Landlord may re-rent the Unit and anything in it for any term and at any rental and any cost in connection therewith shall be borne by Tenant which may include, but is not limited to the cost of repairs, decorations, preparation for renting, broker's fees, advertising costs and attorney's fees. Any rent recovered by Landlord for the re-renting of the Unit shall reduce the amount of money that Tenant owes to Landlord.

### 21. Landlord's Rules

Tenant shall comply with these rules (the "Rules") at all times. If there is a change in the rules, Landlord will give Tenant notice of same. Landlord shall not be liable to Tenant for another Tenant's violation of the Rules. The rights afforded under the following Rules are for the sole benefit of Landlord:

(a) the quiet enjoyment of other tenants shall not be interfered with;

(b) sounds, odors and lights which are annoying to other tenants are not allowed;

(c) floors within the Unit must be covered over 70% of the area of each room except for the bathroom and kitchen;

(d) all posted rules must be followed;

(e) smoking is not permitted in the Unit or hallways;

(f) All flammable or dangerous items may not be kept or stored in the Unit;

(g) no one is allowed access to or the enjoyment of the roof;

(h) nothing shall be placed on or attached to the fire escapes, windows, doors or in the hallways or common areas;

(i) elevators, if any, are to be used by tenants and their guests only. Bicycles are not allowed in the elevators. Tenants and their guests are not to leave any garbage, trash and/or debris in the elevators;

(j) moving of furniture in and out of the Unit must be scheduled with the Landlord;

(k) all deliveries must be made by means of the service entrance, if any;

(l) laundry machines, if provided, may be used at tenants' risk and cost, may only be used at reasonable

(m) cleaning of the exterior of the windows from the outside is strictly forbidden;

(n) if parking is provided, improperly parked vehicles may be immediately removed at tenant's cost;

(o)      tenant   may   not   leave   any   baby carriages/strollers, bicycles, boxes, cartons and/or any items in hallways;

(p) tenant shall use its best efforts to conserve energy and water;

(q) hot plates or means of cooking other than the stove are not permitted.

## 22. Warranty of Habitability

Landlord warrants that the Unit and Premises are suitable for living and that they are free from any condition that is dangerous to health, life and/or safety.

## 23. Limitation of Recovery

Should Tenant obtain a judgment or other remedy from a court of competent jurisdiction for the payment of money by Landlord, Tenant is limited to the Landlord's interest in the Premises for the collection of same.

## 24. Construction and Demolition

Construction and/or demolition may be done in or near the Premises and if same interferes with the ventilation, view and/or enjoyment of the Unit, Tenant's obligations under this Lease shall, in no way, be affected.

## 25. Demolition of Premises

Should Landlord deem it necessary to demolish the Premises, Landlord may terminate this Lease upon six (6) months written notice to Tenant provided such notice is given to all other tenants in the Premises. In such event, Tenant shall surrender the Unit to Landlord upon such date as set forth in the notice.

## 26. Terraces and Balconies

If there is a terrace or balcony as an adjunct to the Unit, such terrace or balcony is subject to the terms of this Lease.

Tenant shall keep the terrace or balcony clean, clear of snow, ice, garbage and other debris. No alteration or additions may be made to the terrace or balcony. Tenant's property may not be stored on the terrace or balcony. Cooking on the terrace or balcony is prohibited.

Tenant shall maintain the terrace or balcony in good condition and make all repairs at Tenant's cost, except those of a structural nature which is the responsibility of Landlord.

## 27. Common Recreational Areas

If applicable, Landlord may give Tenant use of any playground, pool, parking or other areas, the use of which will be at Tenant's own risk and Tenant shall pay any charge imposed by Landlord for such use. Landlord's permission to use these areas may be revoked at any time.

## 28. Landlord's Employees

The employees of Landlord shall not perform any work for Tenant at Tenant's request. Such employees may not do any personal chores of Tenant.

## 29. Condemnation

If any or part of the Premises is taken or condemned by any governmental authority, Landlord may cancel this Lease on notice to Tenant and Tenant's rights hereunder shall end as of the date the authority takes title to the Premises which cancellation date can not be less than thirty (30) days from the date of Landlord's notice. Tenant shall be liable for Monthly Rent and Additional Rent to the date of cancellation and shall make no claim for the unexpired term of the Lease. Any award for the condemnation is the property of Landlord and Tenant assigns to Landlord any and all rights, interest and/or claim in and to such award.

## 30. Bankruptcy

Should Tenant file a voluntary petition in bankruptcy or an involuntary petition is filed against Tenant, or should Tenant assign any property fro the benefit of

this Lease upon thirty (30) days written notice to Tenant.

## 31. Notices

Any notice to be given under this Lease shall be in writing addressed to the party at the addresses set forth herein by certified mail or overnight courier service. Notice by Landlord to one named Tenant shall be deemed given to all Tenants and occupants of the Unit. Each party hereto shall accept notices sent by the other. Any change of address by one party must be given, by notice, to the other. Notice shall be deemed given when posted or delivered to the overnight courier service.

## 32. Waiver of Jury Trial, Set-Off or Counterclaim

The parties hereto waive trial by jury in all matters except for personal injury or property damage claims. In a summary proceeding for eviction, Tenant waives Tenant's right to any set-off and/or counterclaim.

## 33. Broker

Tenant states that _____ is the sole Broker who showed the Unit to Tenant. Tenant shall hold harmless and indemnify Landlord fro any monies expended by Landlord should Tenant's statement herein be untrue.

## 34. Inability of Landlord to Perform

If Landlord is unable to perform any of its obligations to be performed hereunder due to governmental orders, labor strife or inability to secure goods or materials, through no fault on the part of Landlord, this Lease shall not be terminated or cancelled and such inability shall not impact upon Tenant's obligations hereunder.

## 35. Illegality

Should any part of this Lease be deemed illegal, the remaining portions of this Lease shall not be affected thereby and shall remain in full force and effect.

## 36. Non-Disturbance

So long as Tenant pays the Monthly Rent and Additional Rent and there exists no defaults under any of the terms of this Lease, Tenant may peacefully occupy the Unit for the Lease Term.

## 37. Non-Waiver

Any failure by Landlord to insist upon Tenant's full compliance with the terms of this Lease and/or to enforce such terms shall not be deemed to be a waiver of Landlord's rights to insist upon or so enforce the terms of this Lease at a future date.

## 38. Parties Bound

This Lease is binding upon Landlord and Tenant and their respective assignees and/or successors in interest.

## 39. Paragraph Headings

Paragraph headings are for reference only.

## 40. Effectiveness

This Lease shall become effective as of the date when Landlord delivers a fully executed copy hereof to Tenant or Tenant's attorney.

## 41. Entire Agreement

Tenant states that Tenant has read this Lease and that   it   fully   incorporates   all   understandings, representations and promises made to Tenant by Landlord and/or Landlord's agent and that this Lease supercedes all prior representations, agreements and promises, whether oral or written.

## 42. Amendments

This Lease may only be changed or amended in a writing signed by the parties hereto.

## 43. Riders

Additional terms are contained in the riders annexed hereto and designated Rider.

Unit to Landlord vacant, in good condition and broom clean. Prior to such delivery, Tenant shall have vacated same condition as received, reasonable wear and tear excepted.

This Lease has been entered into as of the Date of Lease.

**LANDLORD**

Mr. Paul Glenroy

**TENANT**

Mr. Matthew Walker

LEASE dated    October 22, 2012

between  Mr. Glenroy Paul

having a place of business at  974 Rutland Road - Brooklyn, New York 11212

(hereinafter called "Landlord"),

and Ming Q Inc. (The Premise shall be used for a nail Salon) , a New York corporation

having a place of business at  974 Rutland Road - Brooklyn, New York 11212

(hereinafter called "Tenant").

## WITNESSETH:

1. Demise of Premises, Term and Rent.  Landlord does hereby lease and demise to Tenant, and Tenant does hereby hire and take from Landlord, subject to any ground leases and/or underlying leases and/or mortgages as hereinafter provided and upon and subject to the covenants, agreements, term, provisions and conditions of this Lease for the term hereinafter stated, the portion of the store premises and the portion of the basement each more specifically shown, respectively, hatched and cross-hatched on the plans attached hereto as Exhibits "A" and "B", said demised premises, together with all fixtures, equipment, improvements, installations and appurtenances which at the commencement of or, during the term of this Lease are thereto attached (except items not deemed to be included therein and removable by Tenant as provided in Article 4 of this Lease) are hereinafter called the "premises", and the plot of land on which the Building has been constructed is hereinafter called the "Land".

The term of this Lease shall commence on  FEBRUARY 1, 2013  (when construction is finish & opening of the Ming Q) (subject to postponement of said specific date as provided in Article 2 hereof) or on such earlier date as Tenant shall occupy the premises or any part thereof with the consent of Landlord for the purpose of carrying on the normal functions of Tenant's business (such date for the commencement of the term hereof being hereinafter called the "term commencement date") and shall end on  or shall end on such earlier date upon which said term may expire or be terminated pursuant to any of the conditions of limitation or other provisions of this Lease or pursuant to law.

The premises shall be used for the following, but not for any other purpose, namely:
Landlord agrees that Landlord will not lease any other space in the Building which is subject to Landlord's control to any entity for any primary use which includes any use set forth in the preceding paragraph hereof but nothing contained herein shall preclude Landlord from leasing space where any such use referred to in the preceding paragraph hereof is incidental to the primary or main use of the tenant, occupant or user thereof.

The rent reserved under this Lease for the term hereof shall be and consist of the following fixed rent, namely:
(a)  for and during the period commencing on  FEBRUARY 1, 2013    and ending on  FEBRUARY 1, 2021
($ 2,200.00            ) Dollars per annum;
(b)  for and during the period commencing on  FEBRUARY 1, 2013    and ending on FEBRUARY 1, 2021
($ 2% increase per year ) Dollars per annum;
(c)  for and during the period commencing on            and ending on
($            ) Dollars per annum;
all such fixed rent being payable in equal monthly installments in advance, on the first day of each and every calendar month during said term (except that Tenant shall pay the monthly installment of fixed rent for the month of 1 Year on the execution hereof), plus such additional rent and other charges as shall become due and payable hereunder, which additional rent and other charges shall be payable as hereinafter provided; all to be paid to Landlord at is office, or such other place as Landlord may designate, in lawful money in the Untied States of America.  The monthly installments of fixed rent for the month during which the term commencement date occurs and the month during which the term hereof expires shall each be prorated.

In addition to the foregoing, and in further consideration of Landlord entering into this Lease, upon the execution of this Lease, Tenant shall also pay to Landlord the sum of $ 4,600 Balance due upon signing the lease . If Tenant's check or checks for such sum, or the sum referred to in the immediately preceding paragraph hereof, shall not be honored by the bank upon which it or they are drawn for any reason of any kind or nature whatsoever, this Lease shall be, and shall be deemed to be, without notice, immediately cancelled and terminated and of no further force or effect and Landlord shall have no liability or obligation to Tenant under this Lease.

Provided Tenant shall not at any time be in default of any of the convents, agreements, terms, provisions or conditions of this Lease on its part to be kept, observed and performed, the monthly installments of fixed rent payable by Tenant to Landlord for the period commencing on the term commencement date and ending on  OCTOBER 22, 2012    shall be abated; the twelve (12) monthly installments of fixed rent payable by Tenant to Landlord for the period beginning FEBRUARY 1, 2012    and ending JANUARY 31, 2013        shall each be abated by an amount equal to $            ; and, the sixty (60) monthly installments of fixed rent payable by Tenant to Landlord for the period beginning            and ending        shall each be abated by an amount equal to $

Tenant does hereby covenant and agree promptly to pay the fixed rent, additional rent and other charges herein

reserved as and when the same shall become due and payable, without demand therefor, and without any set-off or deduction whatsoever, and to keep and perform, and to permit no violation of, each and every of the covenants, agreements, terms provisions and conditions herein contained on the part and on behalf of Tenant to be kept and performed.

For default in payment of additional rent or other sums or charges herein reserved or payable by Tenant, Landlord shall have the same remedies as for a default by Tenant in the payment of fixed rent payable hereunder.

If Tenant shall fail to pay any installment of fixed rent or other sums or charges within ten (10) days after the same shall be due then, Tenant shall pay a late charge of $   50.00               for each $1.00 so unpaid. Nothing herein contained shall be intended to violate any applicable law, code or regulation, and, in all instances, such late charge shall be automatically reduced to any maximum applicable legal rate or charge. Such late charge shall be imposed monthly for each late payment and is in addition to all other rights and remedies available to Landlord and shall not be deemed to limit any such rights or remedies.

Tenants' obligations and responsibilities pursuant to any provision of this Lease, including the payment of any fixed rent or additional rent or the keeping, observance or performance of any covenant, agreement, term, provision or condition of this Lease on Tenant's part to be kept, observed or performed, shall survive the expiration or termination of the term of this Lease.

   2.  Occupancy.
   (a) If the premises are not ready for Tenant's occupancy on the term commencement date, then this Lease shall not be affected thereby but, in such case, such specific date shall be deemed to be postponed until the date when the premises are ready for Tenant's occupancy and Tenant shall not have any claim against Landlord, and Landlord shall have no liability to Tenant, by reason of any such postponement of such specific date.  In the event the term commencement date shall be postponed, the expiration date of the term of this Lease set forth in Article 1 hereof shall be extended by the number of days equal to the number of days by which the term commencement date was so postponed and, in addition thereto, each date set forth in clause (a) through and including (c) of said Article 1 shall likewise be extended by said number of days.  In the event of the foregoing, Tenant will, at the request of Landlord, enter into an agreement setting forth the term commencement date and all other dates required to be modified by reason of such postponement.  The parties hereto agree that this Article 2 constitutes an express provision as to the time at which Landlord shall deliver possession of the premises to Tenant, and Tenant hereby waives any rights to rescind this Lease which Tenant might otherwise have pursuant to Section 223a of the Real Property Law of the State of New York or pursuant to any other law of like import now or hereafter in force.
   (b)  Tenant understands, and covenants and agrees, that Landlord shall not be required to perform any work or there installations in or to the premises or the Building and Tenant further covenants and agrees that the premises are leased to Tenant, and Tenant shall accept the premises, in its "as is" condition existing on the term commencement date; provided, however, Landlord shall deliver the premises to Tenant on the term commencement date vacant and in broom clean condition. Tenant further understands and agrees that Landlord makes no representations as to the condition of the premises or the Building or the suitability thereof for the use permitted hereunder.  Landlord agrees that Tenant shall be permitted to use one of the two air conditioning compressors presently being used and designated by Landlord; provided, however, Landlord makes not warranty or representation with respect to the use or condition or suitability or feasibility of any such compressor and Landlord shall have no obligation, responsibility or liability of any kind or nature whatsoever in connection with the compressor so used by Tenant.
   (c)  Subject to the provisions of this Lease, including, but not limited to, Article 6 hereof, Tenant, at Tenant's sole cost and expense, shall be permitted to install an air conditioning generator in the premises and Landlord will permit necessary duct work therefor to be installed in the portion of the Building presently occupied by Landlord.  Upon prior notice to Landlord, Tenant shall be permitted to enter the portion of the Building occupied by Landlord for the purpose of maintaining and servicing said generator provided any such entry shall be accomplished only in the presence of a representative of Landlord and shall not interfere with or affect Landlord or Landlord's use or occupancy of said portion so occupied by Landlord.
   (d)  Tenant, by entering into occupancy of the premises, shall be conclusively deemed to have agreed that Landlord, up to the time of such occupancy, had performed all of its obligations hereunder and that the premises were in satisfactory condition as of the date of such occupancy.  Landlord shall not be responsible for latent defects in the Building or the premises.
   (e)  Tenant covenants agrees that, subject to the covenants, agreements, terms, provisions and conditions of this Lease including, but not limited to, Article 6 hereof, Tenant, at Tenant's sole cost and expense, shall perform all work and other alterations and installations necessary in order to prepare the premises for Tenant's occupancy for the use permitted hereunder including, but not limited to, the construction of demising walls.
   (f)  If, by reason of any of the provisions of this Lease, the fixed rent under this Lease shall commence on any day other than the first day of a calendar month, the fixed rent for such calendar month shall be prorated.
   (g)  A copy of the Certificate of Occupancy covering the Building is attached hereto.

   3.  Use of Premises.  Tenant shall not use the premises or any part thereof, or permit the premises or any part thereof to be used, for any purpose other than the use hereinabove specifically mentioned, subject, however, to all the covenants, agreements, terms, provisions and conditions of this Lease.  Those portions, if any, of the premises which on the plan(s) attached hereto are shown as toilets and utility areas shall be used by Tenant only for the purposes for which they are designed. Tenant will not at any time use or occupy the premises or any part thereof, or permit the premises or any part thereof to be used or occupied, in violation of the certificate of occupancy (temporary or final) issued for the Building and/or the premises.

Tenant shall not sue or permit the use of the premises or any part thereof in any way which would violate any of the covenants, agreements, terms, provisions and conditions of this Lease or for any unlawful purposes or in any unlawful manner and Tenant shall not suffer or permit the premises or any part thereof to be used in any manner or anything to be done therein or suffer or permit anything to be brought into or kept in the premises which, in the judgment of Landlord, shall in any way impair or tend to impair the character, reputation or appearance of the Building as a first-class office building, impair or interfere with or tend to impair or interfere with any of the Building services or the proper and economic heating, cleaning, air conditioning or other servicing of the Building or the premises, or impair or interfere with or tend to impair or interfere with the use of any of the other areas of the Building by, or occasion discomfort, inconvenience or annoyance to, any of the other tenants or occupants of the Building. Tenant shall not install any electrical or other equipment of any kind which, in the judgment of Landlord, might cause any such impairment, interference, discomfort, inconvenience or annoyance.

Except as set forth in Article 1 hereof, Tenant will not, and will not permit anyone to, sell or traffic in any spirituous liquors, wine, ale or beer in or from the premises or carry on any manufacturing in the premises.

If any governmental license or permit shall be required for the proper and lawful conduct of Tenant's business or other activity carried on it the premises, Tenant, at Tenant's expense, shall duly procure and thereafter maintain such license or permit and submit the same to inspection by Landlord. Tenant, at Tenant's expense, shall, at all times, comply with the terms and conditions of each license or permit.

**4. Fixtures, etc., Not to be Removed.** All fixtures, equipment, improvements, installations and appurtenances attached to, or built into, the premises at the commencement of or during the term hereof, whether or not furnished and installed at the expense of Tenant or by Tenant, shall be and remain part of the premises and be deemed the property of Landlord and shall not be removed by Tenant, except as otherwise expressly provided in this Lease. Without limiting the generality of the next preceding sentence, all electric, plumbing, heating, sprinkler, dumbwaiter, elevator, pneumatic tube, telephone, telegraph, communication, radio and television systems, fixtures and outlets, venetian blinds, partitions, railings, gates, doors, vaults, stairs, paneling (including, but not limited to, display cases and cupboards recessed in paneling), molding, shelving, radiator enclosures, cork rubber, linoleum and composition floors, and ventilating, silencing, air conditioning and cooling equipment shall be deemed to be included in such fixtures, equipment, improvements, installations and appurtenances, whether or not attached to or built into the premises. Anything hereinbefore in this Article 4 contained to the contrary notwithstanding, any fixture, equipment, improvement, installation or appurtenance furnished and installed in any part of the premises (whether or not attached thereto or built therein) at the sole expense of Tenant (and with respect to which no credit or allowance shall have been granted to Tenant by Landlord and which was not furnished and installed in replacement of an item which Tenant would not be entitled to remove in accordance with this Article 4) may be removed from the Building by Tenant prior to the expiration of the term hereof and, if and to the extent requested by Landlord (either prior to or not more than 30 days after such expiration), shall be removed from the Building by Tenant prior to such expiration unless such request is made after such expiration (or is made prior to such expiration and Tenant acting with reasonable promptness is not able to remove same from the Building prior to such expiration), in which event the same shall be removed from the Building by Tenant with reasonable promptness after the receipt of such request. The cost and expense of any such removal and the cost and expense of repairing any such damage to the premises or to the Building arising from such removal shall be paid by Tenant on demand. If any fixtures, equipment, improvement, installation or appurtenances which as aforesaid may or is required to be removed from the Building by Tenant is not removed by Tenant from the Building within the time above specified therefor, then Landlord (in addition to all other rights and remedies to which Landlord may be entitled at any time) may at its election deem that the same has been abandoned by Tenant to Landlord, but not such election shall relieve Tenant of Tenant's obligation to pay the cost and expense of removing the same from the Building or the cost or repairing damage to the premises or to the Building arising from such removal.

All the perimeter wall of the premises, any balconies, terraces or roofs adjacent to the premises, and any space in and/or adjacent to the premises used for shafts, stacks, pipes, vertical conveyors, mail chutes, pneumatic tubes, conduits, ducts, electrical or other utilities, rooms containing elevator or air conditioning machines and equipment, sinks, or other similar or dissimilar Building facilities, and the use thereof, as well as access thereto through the premises for the purposes of such use and the operation, improvement, replacement, addition, repair, maintenance and decoration thereof, are expressly reserved to Landlord.

**5. Electric Energy and Water.** Tenant, at Tenant's sole cost and expense, shall furnish through the transmission facilities initially installed in the Building, and supply to the premises, alternating electrical energy to be used by Tenant in the premises in such reasonable quantity as may be reasonably required by Tenant for the operation of Tenant's business from the premises.

Tenant covenants and agrees that at all times its use of electrical energy shall not exceed the capacity of existing feeders to the Building or the risers or wiring installations and Tenant may not use any electrical equipment which, in Landlord's sole and exclusive opinion, will overload any such installations or will interfere with the use thereof by other tenants or occupants of the Building or otherwise have a material or adverse effect on electrical energy service to the Building.

Landlord shall in no way be liable for any failure or defect in the character or supply of electrical energy furnished to the premises except for actual damage suffered by Tenant by reason of any such defect or failure resulting from the wilful gross negligence of Landlord.

In order that Landlord may at all times have all necessary information which it requires in order to maintain and protect

its equipment, Tenant agrees that it will not make any alteration or addition to the electrical equipment and/or appliances in the premises without prior written consent of Landlord in each instance.

Tenant shall pay Landlord the cost for all water consumed in the premises and for any required pumping and heating thereof or other charges which may be imposed by the city or other governmental authority or agency thereof based on the quantity of water so used by Tenant and/or the charge therefor.

All meters necessary for the measurement of Tenant's consumption of electrical energy and water in the premises shall be installed, if required, and maintained by Tenant at Tenant's sole cost and expense.

8.  **Various Covenants.**  Tenant covenants and agrees that Tenant will:

(a)  throughout the term, at Tenant's expense, make all repairs, restoration and replacements in, at and to the premises as and when the same are necessary in order to keep and maintain the premises and the fixtures and appurtenances therein in good order, condition and repair and pay to Landlord the cost of making good any injury, damage or breakage to the Building or the premises (including plate glass).

(b)  faithfully observe and comply with the rules and regulations annexed hereto and such additional rules and regulations as Landlord and "Owner" as such term is hereinafter defined hereafter at any time or from time to time may make and may communicate to Tenant, which, in the judgment of Landlord of Owner, shall be necessary or desirable for the reputation, safety, care or appearance of the Building, or the preservation of good order therein, or the operation or maintenance of the Building, or the equipment thereof, or the comfort of tenants or others in the Building; provided, however, that in the case of any conflict between the provisions of this Lease and any such rules or regulations, the provisions of this Lease shall control, and provided further that nothing contained in this Lease shall be construed to impose upon Landlord any duty or obligation to enforce the rules and regulations or the terms, covenants or conditions in any other lease as against any other tenant and, provided further, that Landlord shall not be liable to Tenant for violation of the same by any other tenant, its servants, employees, agents, visitors, invitees, subtenants or licensees.

(c)  permit Landlord and any mortgagee of the Building or of the Building and the Land or of the interest of Landlord therein and any lessor under any ground or underlying lease, and their representatives, to enter the premises at all reasonable hours, for the purposes of inspection, or of making repairs, replacements or improvements in or to the premises or the Building or equipment, or of complying with all laws, orders and requirements of governmental or other authority or of exercising any right reserved to Landlord by this Lease (including the right, during the progress of any such repairs, replacements, or improvements or while performing work and furnishing materials in connection with compliance with any such laws, orders or requirements, to keep and store within the premises all necessary materials, tools and equipment).

(d)  make no claims against Landlord or any lessor under any ground or underlying lease for any injury or damage to Tenant or to any other person or for any damage to, or loss (by theft or otherwise) of, or loss of use of, any property of Tenant or of any other person irrespective of the cause of such injury, damage or loss, unless caused by the willful gross negligence of Landlord or Owner in the operation or maintenance of the Building; it being understood and agreed that no property other than such as might normally be brought upon or kept in the premises for the purposes herein specified will be brought upon or kept in the premises.

(e)  make no alterations, decorations, installations, repairs, additions, improvements or replacements including, but not limited to, demising walls, in, to or about the premises without Landlord's prior written consent, and then only by contractors or mechanics approved by Landlord which approval of contractors and mechanics Landlord agrees will not be unreasonably withheld or delayed.  Landlord, as a condition of such consent, may impose such requirements upon Tenant for the furnishing, by Tenant, at Tenant's sole cost and expense, of such insurance as Landlord shall determine necessary, appropriate and desirable including, but not limited to, personal liability, property damage and workers' compensation insurance and Landlord, any mortgagee or any ground or underlying lessor as shall be designated by Landlord shall be named as additional insured under any such insurance.  All such alterations, decorations, installations, repairs, additions, improvements or replacements shall be done at Tenant's sole expense and at such times and in such manner as Landlord may from time to time designate.  Prior to the commencement of any such alterations, decorations, installations, repairs, additions, improvements or replacements, Tenant shall submit to Landlord, for Landlord's approval, plans and specifications (to be prepared by and at the expense of Tenant) of such proposed alterations, decorations, installations, repairs, additions, improvements or replacements, in detail, satisfactory to Landlord.  In no event shall any material or equipment be incorporated in or to the premises in connection with any such alteration, decoration, installation, repair, addition, improvement or replacement which is subject to any lien, security agreement, charge, mortgage or other encumbrance of any kind whatsoever or is subject to any conditional sale or other similar or dissimilar title retention agreement.  Any mechanic's lien filed against the premises or the Building for work claimed to have been done for, or materials claimed to have been furnished to, Tenant shall be discharged by Tenant within 10 days thereafter, at Tenant's expense, by payment or filing the bond required by law.  All alterations, decorations, installations, repairs, additions, improvements, replacements or work done by Tenant shall at all times comply with (1) laws, rules, orders, and regulations of governmental authorities having jurisdiction thereof, including without limitation, the American's With Disabilities Act and all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto, (2) rules and regulations of Landlord, and (3) plans and specifications prepared by and at the expense of Tenant theretofore submitted to Landlord for Landlord's prior written approval and which Landlord shall have approved.  No structural alterations, installations, repairs, additions, improvements, replacements or work or any alterations, installations, repairs, additions, improvements,

replacement or work to any utility system in or serving the Building or the premises shall be undertaken, started or begun by Tenant, its agents, servants or employees, until Landlord has approved such plans and specifications; and no amendments or additions to such plans and specifications shall be made without the prior written approval of Landlord; provided, however, Landlord's review and/or approval of such plans and specifications or amendments or additions thereto shall not constitute a determination or acknowledgement by Landlord that such plans and specifications comply with applicable laws, rules, orders and regulations of governmental authorities. Tenant shall be entitled to make nonstructural alterations to the interior of the premises provided Tenant furnishes Landlord with plans and specifications therefor, including "as built" plans and specifications, and otherwise complies with the provisions of this Lease including this paragraph (e). The construction of demising walls by Tenant shall be subject to the prior written consent of Landlord. If Landlord provides hoist and/or elevator service to Tenant's contractors, such service shall be provided on the same terms and conditions as the same is provided to Landlord's contractors. Tenant agrees that it will not at any time prior to or during the term of this Lease, either directly or indirectly, use any contractors and/or labor and/or materials if the use of such contractors and/or labor and/or materials would or will create any difficulty with other contractors and/or labor engaged by Tenant of Landlord or others in the construction, maintenance and/or operation of the Building or any part thereof.

(f) not violate, or permit the violation of, any condition imposed by the standard fire insurance policy issued for office buildings in the County of    KINGS                , and not do anything or permit anything to be done, or keep anything or permit anything to be kept, in the premises, which would increase the fire or other casualty insurance rate on the Building or the property therein, or which would result in insurance companies of good standing refusing to insure the Building or any such property in amounts and against risks as determined by Landlord.

(g) permit Landlord, at reasonable times, to show the premises to any lessor under any ground or underlying lease, or any lessee or mortgagee, or any prospective purchaser, lessee, mortgagee, or assignee of any mortgage, of the Building and/or the Land or of Landlord's interest therein, and their representatives, and during the period of 12 months next preceding the date of expiration of the term hereof with respect to any part of the premises similarly show such part to any person contemplating the leasing of all or a portion of the same.

(h) at the end of the term, quit and surrender to Landlord the premises broom-clean and in good order, condition and repair except for ordinary wear and tear. If the last day of the term of this Lease falls on Sunday or a legal holiday, this Lease shall expire on the business day immediately preceding.

(i) at any time and from time to time upon not less than 5 days' prior notice by Landlord to Tenant, execute, acknowledge and deliver to Landlord, or to anyone Landlord shall designate, a statement of Tenant (or if Tenant is a corporation, an appropriate officer of Tenant) in writing certifying that this Lease is unmodified and in full force and effect (or if there have been modifications, that the same is in full force and effect and as modified and stating the modifications), and the dates to which the fixed rent, additional rent, and other charges have been paid in advance, if any, and stating whether or not Landlord is in default in performance of any covenant, agreement, term, provision or condition contained in this Lease and, if so, specifying each such default, it being intended that any such statement delivered pursuant hereto may be relied upon by Landlord, any lessor under any ground or underlying lease, or any lessee or mortgagee, or any prospective purchaser, lessee, mortgagee, or assignee of any mortgage, of the Building and/or the Land or of Landlord's interest therein.

(j) indemnify, and save harmless, Landlord and any mortgagee and any lessor any under ground or underlying lease, and their respective officers, directors, contractors, agents and employees, from and against any and all liability (statutory or otherwise), claims, suits, demands, damages, judgments, costs, interest and expenses (including, but not limited to, counsel fees and disbursements incurred in the defense of any action or proceeding), to which they may be subject or which they may suffer by reason of, or by reason of any claim for, any injury to, or death of, any person or persons or damage to property (including any loss of use thereof) or otherwise arising from or in connection with the use of or from any work, installation or thing whatsoever done (other than by Landlord or its contractors or the agents or employees of either) in the premises prior to, during, or subsequent to, the term of this Lease or arising from any condition of the premises due to or resulting from any default by Tenant in the performance of Tenant's obligations under this Lease or from any act, omission or negligence of Tenant or any of Tenant's officers, directors, agents, contractors, servants, employees, subtenants, licensees or invitees.

7. Assignment, Mortgaging, Subletting, etc.

(a) Tenant covenants and agrees, for Tenant and its successors, assigns and legal representatives, that neither this Lease nor the term and estate hereby granted, nor any part hereof of thereof, will be assigned, mortgaged, pledged, encumbered or otherwise transferred (whether voluntarily, involuntarily, by operation of law, or otherwise), and that neither the premises, nor any part thereof, will be encumbered in any manner by reason of any act or omission on the part of Tenant, or will be used or occupied, or permitted to be used or occupied, or utilized for desk space or for mailing privileges or as a concession, by anyone other than Tenant, or for any purpose other than as hereinbefore set forth, or will be sublet, without the prior written consent of Landlord in every case and any attempt thereat shall be void any of no force or effect. For the purposes of this Lease, (i) the transfer or transferee or sale or sales (in either one or a series of transactions) of fifty (50%) percent or more of the capital stock of Tenant, if Tenant is a corporation or fifty (50%) percent or more of the ownership interests of Tenant, if Tenant is a partnership or (ii) a merger or consolidation of Tenant into or with an other corporation or business entity shall, in each instance referred to in the preceding clauses (i) and (ii), be deemed to be an assignment of this Lease requiring the prior written consent of Landlord as herein set forth.

If this Lease be assigned or if the premises or any part thereof be sublet or occupied by anybody other than Tenant, Landlord may, after default by Tenant, collect rent from the assignee, subtenant or occupant, and apply the net amount collected to the rent herein reserved, but no such assignment, subletting, occupancy or collection shall be deemed a waiver or any of Tenant's covenants contained in this Article 7 or elsewhere in this Lease or the acceptance of the assignee, subtenant or occupant as Tenant, or a release of Tenant as sub-lessor or assignor from the further performance by Tenant of the covenants, agreements, terms, provisions and conditions of this Lease on the part of the tenant hereunder to be kept, performed or observed. Tenant's liability under this Lease, in the event of an assignment, shall not at any time be released, relieved or discharged by reason of Landlord's consent to such assignment nor shall Tenant at any time be released, relieved or discharged of any such obligations of the parties to this Lease or by any stipulation extending any time for performance hereunder or Landlord's waiver of performance of any obligation hereunder or Landlord's failure to enforce any obligation set forth in this Lease. If this Lease be assigned or if all or any portion of the premises be sublet, the assignee or subtenant, as the case may be, shall have no right, and shall not be entitled, to exercise any option contained in this Lease which may be exercised by Tenant.

(b) Notwithstanding anything to the contrary contained in this Article 7, and so long as Tenant is not in default of any of the covenants, agreements, terms, provisions and conditions of this Lease on its part to be kept, observed and performed, Tenant may, in connection with (i) the sale of all of the capital stock of Tenant, if Tenant is a corporation, or of all of the ownership interests of Tenant, if Tenant is a partnership, or (ii) a merger or consolidation of Tenant into or with any other corporation or business entity or (iii) the sale of all or substantially all of the assets of Tenant, assign this Lease, with Landlord's prior written consent which shall not be unreasonably withheld or delayed, provided that:

(c) Tenant shall furnish Landlord with the name and business address of the proposed assignee, a counterpart of the proposed assignment agreement, and satisfactory information with respect to the nature and character of the business of the proposed assignee together with current financial information of the proposed assigned certified by a certified public accountant and references, including banking references, satisfactory to Landlord;

(d) in the judgment of Landlord, the proposed assignee is financially responsible with respect to its proposed obligations under the proposed assignment agreement and is of a character and reputation, and engaged in a business, which is in keeping with the standards of the Building;

(e) the premises shall be used only for the purpose set forth in Article 1 hereof;

(f) an executed duplicate original, in form satisfactory to Landlord for review by Landlord's counsel, of such assignment agreement shall be delivered to Landlord at least thirty (30) days prior to the effective date thereof. Tenant will also deliver to Landlord, at least thirty (30) days prior to the effective date thereof, an assumption agreement in form satisfactory to Landlord wherein the assignee agrees to assume all of the covenants, agreements, terms, provisions and conditions of this Lease to be kept, observed and performed by Tenant hereunder and which provides that Tenant named herein and such assignee shall, after the effective date of such assignment, be jointly and severally liable for the performance of all of the convents, agreements, terms, provisions and conditions of this Lease;

(g) each assignment shall be subject and subordinate to all of the covenants, agreements, terms, provisions and conditions of this Lease and the "Prime Lease" as such term is hereinafter defined; and

(h) Assignee shall deposit with Landlord an amount equal to        · 12            months of the fixed rent then in effect; and

(i) Tenant covenants and agrees that, notwithstanding any assignment and/or the acceptance of rent or additional rent by Landlord from any assignee, Tenant shall and will remain fully liable for the payment of the rent and additional rent due and to become due hereunder and for the performance of all the covenants, agreements, terms, provisions and conditions contained in this Lease and Guaranty on the part of Tenant to be kept, observed and performed, ("Obligation") provided, however, that if Tenant shall timely have complied with all of the conditions set forth in this Article 7 and Landlord has approved (in writing) the proposed assignee, Tenant shall be released from said Obligations, effective upon the effective date of the assignment of this Lease.

The listing of any name other than that of Tenant, whether on the doors of the premises, on the Building directory, or otherwise, shall not operate to vest any right or interest in this Lease or in the premises or to be deemed to be the written consent of Landlord mentioned in this Article 7, it being expressly understood that any such listing is a privilege extended by Landlord revocable at will by written notice to Tenant.

B.  Changes or Alterations by Landlord.  Landlord reserves the right to make such changes, alterations, additions, improvements, repairs or replacements in or to the Building (including the premises) and the fixtures and equipment thereof, as well as in the street entrances, halls, passages, tunnels, elevators, escalators, stairways and other parts thereof, and to erect, maintain and use pipes, ducts and conduits in and through the premises, all as Landlord may deem necessary, appropriate or desirable; provided, however, that there be no unreasonable obstruction of the means of access to the premises or unreasonable interference with the use of the premises. Nothing contained in this Article 8 shall be deemed to relieve Tenant of any duty, obligation or liability of Tenant with respect to making any repair, replacement of improvement or complying with any law, order or requirement of any governmental or other authority. Landlord reserves the right to name the Building and to change the name or address of the Building at any time and from time to time. Neither this Lease nor any use by Tenant shall give Tenant any right or easement to the use of any door or any passage or any tunnel or any concourse or any plaza connecting the Building

with any other building or to any public convenience, and the use of such doors, passages, tunnels, concourses and Plazas and of such conveniences may without notice to Tenant be regulated or discontinued at any time and from time to time by Landlord without Landlord incurring any liability to Tenant therefor and without affecting the obligations of Tenant under this Lease.

If at any time any windows of the premises are darkened or obstructed incident to or by reason of repairs, replacements, maintenance and/or cleaning in, on, to or about the Building or any part or parts thereof or otherwise or are temporarily or permanently closed, Landlord shall not be liable for any damage Tenant may sustain thereby and Tenant shall not be entitled to any compensation therefor nor abatement of rent nor shall the same release Tenant from its obligations hereunder nor constitute an eviction.

There shall be no allowance to Tenant for a diminution of rental value and no liability on the part of Landlord by reason of inconvenience, annoyance or injury to business arising from Landlord, Tenant or others making any changes, alterations, additions, improvements, repairs or replacements in or to any portion of the Building or the premises, or in or to fixtures, appurtenances or equipment thereof, and no liability upon Landlord for failure of Landlord or others to make any changes, alterations, additions, improvements, repairs or replacements in or to any portion of the Building or the premises, or in or to the premises, or in or to the fixtures appurtenances or equipment thereof.

9. Damage by Fire, etc. If any part of the premises shall be damaged by fire or other casualty, Tenant shall give prompt written notice thereof to Landlord and Landlord shall proceed with reasonable diligence subsequent to the collection by Landlord of insurance proceeds, and in a manner consistent with the provisions of any underlying lease and any underlying mortgage, to repair such damage, and if any part of the premises shall be rendered untenantable by reason of such damage, the annual fixed rent payable hereunder, to the extent that such fixed rent relates to such part of the premises and such abatement is in excess of the annual rate of any other existing abatement of fixed rent relating thereto under any other covenant, agreement, term, provision or condition of this Lease, shall be abated for the period from the date of such damage to the date when such part of the premises shall have been made tenantable or to such earlier date upon which the full term of this Lease with respect to such part of the premises shall expire or terminate, unless such fire or other casualty shall have resulted from the negligence of Tenant or the employees, licensees or invitees of Tenant. Landlord shall not be liable for any inconvenience or annoyance to Tenant or injury to the business of Tenant resulting in any way from such damage or the repair thereof. Tenant understands that Landlord will not carry insurance of any kind on Tenant's property, to wit, Tenant's goods, furniture or furnishings or any fixtures, equipment, improvements, installations or appurtenances removable by Tenant as provided in this Lease, and that the Landlord shall not be obligated to repair any damage thereto or replace the same.

If substantial alteration or reconstruction of the Building shall, in the opinion of Landlord, be required as a result of damage by fire or other casualty (whether or not the premises shall have been damaged by such fire or other casualty), then this Lease and the term and estate hereby granted may be terminated by Landlord giving to Tenant within 90 days after the date of such damage written notice specifying a date, not less than 30 days after the giving of such notice, for such termination. In the event of the giving of such notice of termination, this Lease and the term and estate hereby granted shall expire as of the date specified therefor in such notice with the same effect as if such date were the date hereinbefore specified for the expiration of the full term of this Lease, and the fixed rent and additional rent payable hereunder shall be apportioned as of such date of termination, subject to abatement, if any, as and to the extent above provided. In the event Landlord shall not give such notice of termination, Tenant's obligation to pay all rent and additional rent due and to become hereunder shall continue for so long as Tenant's rent insurance policy (as required under Article 10(b) below) shall be in effect or for the period of nine (9) months from the date of such damage, whichever is longer.

Notwithstanding anything to the contrary contained herein, if at the time of the damage or destruction the premises shall in the Tenant's opinion reasonably exercised be prospectively untenantable for 12 months or more, Tenant shall have the right, within 10 days after date of damage, to elect to cancel the Lease by giving written notice to Landlord, which notice shall specify the date of cancellation not earlier than 30 days following the giving of such notice. Such cancellation shall otherwise be of no effect upon the covenants and agreements of this Lease to be kept and observed by the Tenant, and Tenant shall not be released or relieved of any liability or obligation theretofore accrued or incurred or outstanding or unsatisfied as of the date of such cancellation.

Each party agrees to endeavor to have included in each of its insurance policies (insuring the Building and Landlord's property therein, in the case of Landlord, and insuring Tenant's Property in the premises, in the case of Tenant, against loss, damage of destruction by fire or other casualty) a waiver of the insurer's right of subrogation against the other party and against all other tenants in the Building, or, if such waiver should be unobtainable or unenforceable, (a) an express agreement that such policy shall not be invalidated if the assured waives the right of recovery against any party responsible for a casualty covered by the policy before the casualty or (b) any other form of permission for the release of the other party. If such waiver, agreement or permission shall not be, or shall cease to be, obtainable (i) without additional charge, or (ii) at all, then the insured party shall so notify the other party promptly after learning thereof. In case such waiver, agreement, or permission can be obtained at additional charge, if the party so notified shall so elect and shall pay the insurer's charge therefor, such waiver, agreement or permission shall be included in the policy.

Each party hereby releases the other party, and Tenant hereby releases all other tenants in the Building, with respect to any claim (including a claim for negligence) which it might otherwise have against the other party (or, in the case of Tenant, against all such other tenants) for loss, damages with respect to its property occurring during the term of this Lease to the extent

to which it is insured under a policy or policies containing a waiver of subrogation or permission to release liability, as provided in the preceding paragraph. If, notwithstanding the recovery of insurance proceeds by either party for loss, damage or destruction of its property, the other party is liable to the first party with respect thereto or is obligated under this Lease to make replacement, repair or restoration or payment, then, provided the first party's right of full recovery under its insurance policies is not thereby prejudiced or otherwise adversely affected, the amount of the net proceeds of the first party's insurance against such loss, damage or destruction shall be offset against the second party's liability to the first party therefor, or shall be made available to the second party to pay for replacement, repair of restoration, as the case may be. Nothing contained in this paragraph shall be deemed to relieve either party of any duty imposed elsewhere in this Lease to repair, restore or rebuild or to nullify any abatement of rents provided for elsewhere in this Lease.

    This Lease shall be considered an express agreement governing any case of damage to or destruction of the Building or any part thereof by fire or other casualty, and Section 227 of the Real Property Law of the State of New York providing for such a contingency in the absence of express agreement, and any other law of like import now or hereafter in force, shall have no application in such case.

    10. Insurance. Tenant, at its own expense, shall maintain, for the benefit of Landlord and Tenant and any mortgagee and any lessor under any ground or underlying lease:

    (a) Insurance covering the premises and equipment therein against loss or damage by fire and such risks as are customarily included in extended coverage endorsements attached to fire insurance policies covering comparable property in the vicinity of the premises including vandalism and malicious mischief, war risk (when obtainable), atomic bomb (when obtainable), in an amount sufficient to prevent the assured from becoming a co-insurer within the terms of the applicable policies, but in any event in an amount not less than the full replacement value thereof, or the amount required under any mortgage to which this Lease is subject, whichever is greater,

    (b) rent insurance in an amount equal to the fixed net rent and additional rent payable under this Lease for as long as a period as Tenant is able to secure not to exceed one year, and

    (c) if required by Landlord or any mortgagee, such other or additional insurance in such amounts against other insurable hazards (including but not limited to war risk insurance when obtainable) as Landlord or such mortgagee shall determine.

    The term "full replacement value", as use herein shall mean the cost of actual replacement (excluding foundation and excavation costs and cost of underground flues, pipes or drains) without provision for physical depreciation, and said "full replacement value" shall be determined from time to time, at Landlord's request, but at Tenant's expense, not more frequently than once every two years, by an appraiser for any of insurance companies issuing the policies referred to in subdivisions (a) or (c) hereinabove set forth. Insurance in the amount set forth in subdivision (a) shall be carried if same is issued regularly for comparable buildings by licensed insurance companies in New York State and, if same is not so regularly issued, Tenant shall obtain the closest type of protective insurance then available or, at Landlord's sole election, Landlord may obtain such "full replacement value" coverage and Tenant shall pay any additional premium therefor.

    Tenant shall not carry any separate insurance of the same character required by this Article unless Landlord and any mortgagee and any lessor under any ground or underlying lease shall be named as assureds with loss payable as interest may appear. However, Tenant may carry insurance, solely for its own account and benefit, insuring against loss of all or part of its leasehold estate hereunder.

    Tenant, at its own expense, shall maintain for the mutual benefit of Landlord, Tenant, Owner and any mortgagee and any lessor under any ground or underlying lease, general public liability insurance against claims for bodily injury, death or property damage occurring in, on or about the premises and any adjoining sidewalk, curb or vault (including, without limitation, bodily injury, death or property damage resulting directly or indirectly from any change, alteration, improvement or repair thereof) with such limits as Landlord from time to time may require for bodily injury or death to any one person and for bodily injury or death to any number of persons arising out of one accident and for property damage.

    Tenant at its own expense, shall also maintain for the mutual benefit of Landlord, Tenant and any mortgagee and any lessor under any ground or underlying lease, single limit coverage of         ($            ) Dollars for bodily injury or death to any one person or any number of persons arising out of one accident and for property damage as of the date hereof.

    The insurance required under this Article shall be effected by valid and enforceable policies issued by insurance companies licensed to do business in the State of New York and approved in writing by Landlord and shall set forth the indemnity referred to in paragraph (j) of Article 8 hereof. Any insurance policy or policies under this Article shall cover only the premises and not any other properties owned, operated or leased by Tenant.

    At the commencement of the term of this Lease and thereafter, not less than thirty (30) days prior to the expiration date or the expiring policies theretofore furnished pursuant to this Article, originals of such policies or renewal policies, as the case may be, shall be delivered by Tenant to Landlord with proof of payment of premium thereof. However, if the premium under any policy is payable in installments, Tenant shall furnish, simultaneously with the delivery of the policy, proof of payment of the current installment, and thereafter Tenant shall furnish to Landlord proof of payment of each subsequent installment within five (5) days after it becomes due. If the premiums are covered by a mortgage to which this Lease is subject, originals of the policies for the insurance required hereunder shall be delivered to the mortgagee, and, if obtainable, duplicates thereof, and if not obtainable, certificates thereof shall be delivered to Landlord.

All policies of insurance required under this Article shall name Landlord, Tenant and any mortgagee and any lessor under any ground or underlying lease, as the assureds, as their respective interests may appear, and the policies for the insurance required under subdivisions (a) and (c) hereinabove set forth also shall be payable, under a standard mortgagee clause, without contribution, to the holder of any mortgage covering the premises. Each policy of insurance required under this Article, to the extent obtainable, shall contain an agreement by the insurer that it will not be cancelled without at least thirty (30) days' prior written notice to Landlord and the insured holder of any mortgage covering the premises and that no act or omission of any insured party (including mortgagees) named therein shall serve to invalidate, cancel or release or relieve the insurer thereunder from any liability which it may have to any other insured party so named. If such agreement cannot be obtained with respect to any policy, Tenant shall notify Landlord, in writing, to such effect and Tenant shall accept an insurer named by Landlord who will consent to include such agreement in like policy provided that the inclusion thereof does not require Tenant to pay any substantial additional premium.

The loss, if any, under policies provided for herein (other than a loss under the insurance required by subdivision (b) which shall be adjusted by and paid to Landlord) shall be adjusted by and paid to Landlord or any mortgagee. All insurance policies, to the extent reasonably obtainable, shall provide that the loss, if any thereunder, shall be adjusted and paid as provided in this Article.

11. **Condemnation.** In the event that the whole of the premises shall be lawfully condemned or taken in any manner for any public or quasi-public use, this Lease, and the term and estate hereby granted, shall forthwith cease and terminate as of the date of vesting of title. In the event that only a part of the premises shall be so condemned or taken, then, effective as of the date of vesting of title, the fixed rent hereunder shall be abated in an amount thereof apportioned accordingly to the area of the premises so condemned or taken. In the event that only a part of the Building shall be so condemned or taken, then (a) Landlord (whether or not the premises be affected) may, at Landlord's option, terminate this Lease and the term and estate hereby granted as of the date of such vesting of title by notifying Tenant in writing of such termination within 60 days following the date on which Landlord shall have received notice of vesting of title, or (b) if such condemnation or taking shall be of a substantial part of the premises, Tenant may, at Tenant's option, by delivery of notice in writing to Landlord within 60 days following the date on which Tenant shall have received notice of vesting of title, terminate this Lease and the term and estate hereby granted as of the date of vesting of title; provided, however, if neither Landlord nor Tenant elects to terminate this Lease, as aforesaid, this Lease shall be and remain unaffected by such condemnation or taking, except that the fixed rent payable hereunder shall be abated to the extent, if any, hereinbefore provided in this Article 11. In the event that only a part of the premises shall be so condemned or taken and this Lease and the term and estate hereby granted are not terminated as herein before provided, Landlord will, with reasonable diligence and at its expense, restore the remaining portion of the premises as nearly as practicable to the same condition as it was in prior to such condemnation or taking.

In the event of their termination in any of the cases hereinbefore provided, this Lease and the term and estate hereby granted shall expire as of the date of such termination with the same effect as if that were the date hereinbefore set for the expiration of the term of this Lease, and the fixed rent and additional rent payable hereunder shall be apportioned as of such date.

In the event of any condemnation or taking hereinbefore mentioned of all or a part of the Building, Landlord shall be entitled to receive the entire award in the condemnation proceeding, including any award made for the value of the estate vested by this Lease in Tenant, and Tenant hereby expressly assigns to Landlord any and all right, title and interest of Tenant now or hereafter arising in or to any such award or any part thereof, and Tenant shall be entitled to receive no part of such award.

It is expressly understood and agreed that the provisions of this Article 11 shall not be applicable to any condemnation or taking for governmental occupancy for a limited period.

12. **Compliance with Laws.** Tenant, at Tenant's expense, shall comply with all laws and ordinances, and all rules, orders and regulations of all governmental authorities and of all insurance bodies, at any time duly issued or in force, applicable to the premises or any part thereof or to Tenant's use thereof (including, without limitation, the Americans With Disabilities Act and all regulations issued thereunder and the Accessibility Guidelines for Buildings and Facilities issued pursuant thereto), except that Tenant shall not hereby be under any obligation to comply with any law, ordinance, rule, order or regulation requiring any structural alteration of or in connection with the premises, unless such alteration is required by reason of a condition which has been created by, or at the instance of, Tenant, or is attributable, directly or indirectly, to the use or manner of use to which Tenant puts the premises, or is required by reason of a breach of any of Tenant's covenants and agreements hereunder. Where any structural alteration of or in connection with the premises is required by any such law, ordinance, rule, order or regulation, and, by reason of the express exception hereinabove contained, Tenant is not under any obligation to make such alteration, then Landlord shall have the option of making such alteration and paying the cost thereof, or of terminating this Lease and the term and estate hereby granted by giving to Tenant not less than 30 days' prior written notice of such termination; provided, however, that if within 15 days after the giving by Landlord of its notice of termination as aforesaid, Tenant shall give written notice to Landlord stating that Tenant elects to make such alteration at the expense of Tenant, then such notice of termination shall be ineffective provided that Tenant, at Tenant's expense, shall, concurrently with the giving of such notice to Landlord, execute and deliver to Landlord Tenant's written undertaking, with a surety and in form and substance satisfactory to Landlord, obligating Tenant to promptly and duly make such alteration in a manner satisfactory to Landlord and to save Landlord harmless from any

and all costs, expenses, penalties and/or liabilities (including, but not limited to, accountants' and attorneys' fees) in connection therewith or by reason thereof; and Tenant covenants and agrees that, after so electing to make any such alteration, Tenant will, at Tenant's expense, and in compliance with all the covenants, agreements, terms, provisions and conditions of this Lease, including, but not limited to, subparagraph (e) of Article 6 hereof, make such alteration and Tenant, at Tenant's expense, will promptly and duly perform all covenants, conditions and provisions of such undertaking and that all such covenants, conditions, and provisions of such undertaking shall be deemed to constitute covenants, condition and provisions of this Lease to be kept or performed on the part of Tenant with the same force and effect as if the same had been set forth herein.

In the event that a notice of termination shall be given by the Landlord under the provisions of this Article 12 and such notice shall not become ineffective as hereinbefore provided, this Lease and the term and estate hereby granted shall expire as of the date specified therefor in such notice with the same effect as if that were the date hereinbefore set for the expiration of the term of this Lease, and the fixed rent and additional rent payable hereunder shall be apportioned as of such date of termination.

13. **Accidents to Plumbing and Other Systems.** Tenant shall give to Landlord prompt written notice of any damage to, or defective condition in, any part or appurtenance of the Building's plumbing, electrical, heating, air conditioning or other similar or dissimilar system serving, located in, or passing through, the premises and the damage or defective condition shall be remedied by Landlord with reasonable diligence, but if such damage or defective condition was caused by, or resulted from the use or manner of use by, Tenant or by the employees, licensees or invitees of Tenant, the cost of the remedy thereof shall be paid by Tenant as additional rent promptly upon receipt of Landlord's bill therefor. Tenant shall not be entitled to claim any damage arising from any such damage or defective condition unless the same shall have been caused by the willful gross negligence of Landlord in the operation or maintenance of the Building and the same shall not have been remedied by Landlord with reasonable diligence after written notice thereof from Tenant to Landlord; nor shall Tenant be entitled to claim any eviction by reason of any such damage or defective condition.

14. **Subordination.** (a)  This Lease is subject and subordinate in all respects to all ground leases and/or underlying leases now or hereafter covering the real property of which the premises form a part and to all mortgages which may now or hereafter be placed on or affect such leases and/or real property, and/or Landlord's interest therein, and to each advance made and/or hereafter to be made under any such mortgages, and to all renewals, additions, modifications, consolidations, replacements, spreaders and extensions thereof and all substitutions of and for such ground leases and/or underlying leases and/or mortgages. This subparagraph (a) shall be self-operative and no further instrument of subordination shall be required. In confirmation of such subordination, Tenant shall execute and deliver promptly any certificate that Landlord and/or mortgagee and/or the lessor under any ground or underlying lease and/or their respective successors in interest may request. Tenant hereby constitutes and appoints Landlord and/or any mortgagee and/or the lessor under any ground or underlying lease and/or their respective successors in interest Tenant's attorney-in-fact to execute and deliver any such certificate or certificates for and on behalf of Tenant.

(b)  Without limitation of any of the provisions of this Lease, if at any time during the term of this Lease, Landlord shall be the holder of a leasehold estate covering the real property of which the premises form a part, and if such leasehold estate shall terminate or be terminated for any reason, Tenant agrees, at the election and upon demand of any owner of the real property of which the premises form a part, or of any mortgagee in possession thereof, or of any holder of a leasehold hereafter affecting the real property of which the premises form a part, to attorn, from time to time, to any such owner, mortgagee or holder, upon the terms and conditions set forth herein for the remainder of the term demised in this Lease. The foregoing provisions shall inure to the benefit of any such owner, mortgagee or holder, shall apply to the tenancy of Tenant notwithstanding that this Lease may terminate upon the termination of any such leasehold estate, and shall be self-operative upon any such demand, without requiring any further instrument to give effect to said provisions. Tenant, however, upon demand of any such owner, mortgagee or holder, agrees to execute, from time to time, an instrument in confirmation of the foregoing provisions, satisfy to such owner, mortgagee or holder, in which Tenant shall acknowledge such attornment and shall set forth the terms and conditions of its tenancy, which shall be the same as those set forth herein and shall apply for the remainder of the term originally demised in this Lease. Nothing contained in this subparagraph (b) shall be construed to impair any right, privilege or option of any such owner, mortgagee or holder.

(c)  The term "mortgage(s)" as used in this Lease shall include any mortgage or any deed of trust. The term "mortgagee(s)" as used in this Lease shall include any mortgagee or any trustee under a deed of trust. The term "mortgagor(s)" as used in this Lease shall include any mortgagor or any grantor under a deed of trust.

15. **Notices.** Any notice, consent, approval, request, bill, demand or statement hereunder by either party to the other party shall be in writing and shall be deemed to have been duly given when mailed if sent by registered or certified mail. return receipt requested addressed to such other party, which address for Landlord shall be                                    and for Tenant shall be the premises (or Tenant's address as hereinbefore set forth if mailed prior to Tenant's occupancy of the premises), or if the address of such other party for such notices, consents, approvals, requests, bills, demands or statements shall have been duly changed as hereinafter provided, if mailed, as aforesaid, to such other party at such changed address. Either party may at any time change the address for such notices, consents, approvals, requests, bills, demands or statements by delivering or mailing, as aforesaid, to the other party a notice stating the change and setting forth the changed address. If the

term "Tenant" as used in this Lease refers to more than one person, any notice, consent, approval, request, bill, demand or statement given as aforesaid to any one of such persons shall be deemed to have been duly given to Tenant. Notwithstanding the foregoing, bills and statements by Landlord to Tenant for fixed rent; additional rent or other sums or charges payable by Tenant to Landlord may be delivered personally or sent by regular mail.

16. Conditions of Limitation. This Lease and the term and estate hereby granted are subject to the limitation that:

(a) in case Tenant shall make an assignment of its property for the benefit of creditors or shall file a voluntary petition under any bankruptcy or insolvency law, or an involuntary petition under any bankruptcy or insolvency law shall be filed against Tenant and such involuntary petition is not dismissed within 60 days after the filing thereof,

(b) in case a petition is filed by or against Tenant under the Reorganization provisions of the United States Bankruptcy Act or under the provisions of any law of like import, unless such petitioner under said Reorganization provisions be one filed against Tenant which is dismissed within 60 days after its filing,

(c) in case Tenant shall file a petition under the Arrangement provisions of the United States Bankruptcy Act or under the provisions of any law of like import,

(d) in case a permanent receiver, trustee or liquidator shall be appointed for Tenant or of or for the property of Tenant, and such receiver, trustee or liquidator shall not have been discharged within 60 days from the date of his appointment.

(e) in case Tenant shall default in the payment of any fixed rent or additional rent or any other sum or charge payable by Tenant to Landlord on any date upon which the same becomes due,

(f) in case Tenant shall default in the due keeping, observing or performance of any covenant, agreement, term, provision or condition of this Lease on the part of Tenant to be kept, observed or performed (other than a default of the character referred to in subparagraph (e) of this Article 16), and if such default shall continue and shall not be remedied by Tenant within 10 days after Landlord shall have given to Tenant a written notice specifying the same, or, in the case of such a default which for causes beyond Tenant's control cannot with due diligence be cured within said period of 10 days, if Tenant (i) shall not, promptly upon the giving of such notice, advise Landlord in writing of Tenant's intention to duly institute all steps necessary to remedy such default, (ii) shall not duly institute and thereafter diligently prosecute to completion all steps necessary to remedy the same, or (iii) shall not remedy the same within a reasonable time after the date of the giving of said notice by Landlord,

(g) in case any event shall occur or any contingency shall arise whereby this Lease or the estate hereby granted or the unexpired balance of the term hereof would, by operation of law or otherwise, devolve upon, or pass to, any person, firm, association or corporation other than Tenant except as expressly permitted under Article 7 hereof, or whenever Tenant shall desert or abandon the premises or the same shall become vacant (whether the keys are surrendered or not an whether the rent be paid or not), or

(h) in case any other lease held by Tenant from Landlord shall expire and terminate (whether or not the term thereof shall then have commenced) as a result of the default of Tenant thereunder or of the occurrence of an event as therein provided (other than by expiration of the fixed term thereof or pursuant to a cancellation or termination option therein contained), then in any of said cases Landlord may give to Tenant a notice of intention to end the term of this Lease at the expiration of 3 days from the date of the giving of such notice, and, in the event that such notice is given, this Lease and the term and estate hereby granted (whether or not the term shall theretofore have commenced) shall expire and terminate upon the expiration of said 3 days with the same effect as if that day were the date hereinbefore set for the expiration of the term of this Lease, but Tenant shall remain liable for damages as provided in Article 18 hereof. If the term "Tenant", as used in this Lease, refers to more than one person, then, as used in subparagraphs (a), (b), (c), (d) and (h) of this Article 16, said term shall be deemed to include all of such persons or any one of them,; if any of the obligations of Tenant under this Lease is guaranteed, the term "Tenant", as used in said subparagraphs, shall be deemed to include also the guarantor or, if there be more than one guarantor, all or any one of them; and if this Lease shall have been assigned, the term "Tenant", as used in said subparagraphs, shall be deemed to include the assignee and the assignor or either of them under any such assignment unless Landlord shall, in connection with such assignment, release the assignor from any further liability under this Lease, in which event the term "Tenant", as used in said paragraph, shall not include the assignor so released.

17. Re-Entry by Landlord. If Tenant shall default in the payment of any fixed rent or additional rent or any other sum or charge payable hereunder by Tenant to Landlord on any date upon which the sum becomes due, or if this Lease shall expire as in Article 16 hereof provided, Landlord or Landlord's agents and servants may immediately, or at any time thereafter, re-enter into or upon the premises, or any part thereof, in the name of the whole, either by summary dispossess proceedings or by any suitable action or proceeding at law, or by force or otherwise, without being liable to indictment, prosecution or damages therefor, and may repossess the same, and may remove any persons therefrom, to the end that Landlord may have, hold and enjoy the premises again as and of its first estate and interest therein. The words "re-enter", "re-entry" and "re-entered" as used in this Lease are not restricted to their technical legal meanings. In the event of any termination of this Lease under the provisions of Article 16 hereof or in the event Landlord shall re-enter the premises under the provisions of this Article 17 or in the event of the termination of this Lease (or of re-entry) by or under any summary dispossess or other proceeding or action or any provision of law, Tenant shall thereupon pay to Landlord the fixed rent, additional rent and any other sum or charge payable hereunder by Tenant to Landlord up to the time of such termination of this Lease, or of such recovery of possession of the premises by Landlord, as the case may be, and shall also pay to Landlord damages as provided in Article 18 hereof.

In the event of a breach of threatened breach on the part of the Tenant with respect to any of the covenants,

agreements, terms, provisions or conditions on the part of or on behalf of Tenant to be kept, observed or performed, Landlord shall also have the right of injunction. The specified remedies to which Landlord may resort hereunder are cumulative and are not intended to be exclusive of any other remedies or means of redress to which Landlord may lawfully be entitled at any time, and Landlord may invoke any remedy allowed at law or in equity as if specific remedies were not herein provided for.

In the event of (a) the termination of this Lease under the provisions of Article 16 hereof, (b) the re-entry of the premises by Landlord under the provisions of this Article 17, or (c) the termination of this Lease (or re-entry) by or under any summary dispossess or other proceeding or action or any provision of law by reason of default hereunder on the part of Tenant, Landlord shall be entitled to retain all monies, if any paid by Tenant to Landlord, whether as advance rent, security or otherwise, but such moneys shall be credited by Landlord against any fixed rent, additional rent or any other sum or charge due from Tenant at the time of such termination or re-entry or, at Landlord's option, against any damages payable by Tenant under Article 18 hereof or pursuant to law.

18. Damages. In the event of any termination of this Lease under the provisions of Article 16 hereof or in the event that Landlord shall re-enter the premises under the provisions of Article 17 hereof or in the event of the termination of this Lease (or of re-entry by or under any summary dispossess or other proceeding or action or any provision of law), Tenant will pay to Landlord as damages, at the election of Landlord, either:

(a) a sum at which at the time of such termination of this Lease or at the time of any such re-entry by Landlord, as the case may be, represents the then value of the excess, if any, of (1) the aggregate of the fixed rent and the additional rent under Article 24 hereof which would have been paid hereunder by Tenant had this Lease not so terminated, for the period commencing with such earlier termination of this Lease or the date of any such re-entry, as the case may be, and ending with the date hereinbefore set for the expiration of the full term granted, over (2) the aggregate rental value of the premises for the same period, or

(b) sums equal to the aggregate of the fixed rent and the additional rent under Article 24 hereof (if any) which would have been payable by Tenant had this Lease not so terminated, or had Landlord not so re-entered the premises, payable upon the due dates therefor specified herein following such termination or such re-entry and until the date hereinbefore set for the expiration of the full term hereby granted; provided, however, that if Landlord (Landlord, however, not being obligated to do so) shall re-let all or any part of the premises for all or any part of said period, Landlord shall credit Tenant with the net rents actually received by Landlord from such re-letting, such net rents to be determined by first deducting from the gross rents as and when received by Landlord from such re-letting the expenses, including attorneys fees, incurred or paid by Landlord in terminating this Lease and/or re-entering the premises and of securing possession thereof, as well as the expenses of re-letting, including altering and preparing the premises for new tenants, brokers' commission, attorneys' fees and all other similar or dissimilar expenses properly chargeable against the premises and the rental therefrom in connection with such re-letting, it being understood that any such re-letting may be for a period equal to, less than or longer than the remaining term of this Lease; provided, further, that (i) in no event shall Tenant be entitled to receive any excess of such net rents over the sums payable by Tenant to Landlord hereunder, (ii) in no event shall Tenant be entitled in any suit for the collection of damages pursuant to this subparagraph (b) to a credit in respect of any net rents from a re-letting except to the extent that such net rents are actually received by Landlord prior to the commencement of such suit, and (iii) if the premises or any part thereof should be re-let in combination with other space, then proper apportionment on a square foot area basis shall be made of the rent received from such re-letting and of the expenses of re-letting.

For the purposes of subparagraph (a) of this Article 18, the amount of additional rent which would have been payable by Tenant under Article 24 hereof shall be deemed to be an amount equal to the amount of such additional rent payable by Tenant for the applicable period ending immediately preceding such termination of this Lease or such re-entry. Suit or suits for the recovery of such damages, or any installments thereof, may be brought by Landlord from time to time at its election, and nothing contained herein shall be deemed to require Landlord to postpone suit until the date when the term of this Lease would have expired if it had not been terminated under the provisions of Article 16 hereof, or under any provision of law, or had the Landlord not re-entered the premises.

Nothing herein contained shall be construed as limiting or precluding the recovery by Landlord against Tenant of any sums or damages to which, in addition to the damages particularly provided above, Landlord may lawfully be entitled by reason of any default hereunder on the part of Tenant.

19. Waiver by Tenant. Tenant, for Tenant, and on behalf of any and all persons, firms corporations and associations claiming through or under Tenant, including creditors of all kinds, does hereby waive and surrender all right and privilege which they or any of them might have under or by reason of any present or future law to redeem the premises or to have a continuance of this Lease for the term hereby demised after Tenant is dispossessed or ejected therefrom by process of law or under the terms of this Lease or after the expiration or termination of this Lease as herein provided or pursuant to law. Tenant also waives the provisions of any law relating to notice and/or delay in levy of execution in case of an eviction or dispossess of a tenant for non-payment of rent, and of any other law of like import now or hereafter in effect. It is further mutually agreed that in the event Landlord commences any summary proceeding, Tenant will not interpose any counterclaim of whatever nature or description in any such proceeding.

20. <u>Waiver of Trial by Jury.</u>  It is mutually agreed by and between Landlord and Tenant that, except in the case of any action, proceeding or counterclaim brought by either of the parties against the other for personal injury or property damage, the respective parties hereto shall, and they hereby do, waive trial by jury in any action, arising out of or in any way connected with this Lease, the relationship of landlord and tenant, Tenant's use or occupancy of the premises, and/or any claim of injury or damage, and any emergency statutory or any other statutory remedy.

21. <u>Cleaning, Heating, Air Conditioning, Services, Etc.</u>  Tenant understands, and covenants and agrees, that Landlord shall not be obligated to furnish any heating, air conditioning or other services, utility or otherwise, of any kind or nature whatsoever, in and to the premises or the Building and all such services shall be furnished by Tenant, at its sole cost and expense, and subject to the approval of Landlord as to the means and methods thereof.

Tenant, at Tenant's sole cost and expense, shall keep the premises and the sidewalks in front of the premises clean and neat and shall remove all refuse, rubbish, debris and snow therefrom. All refuse, rubbish and debris shall be deposited only in such receptacles and in such a manner as shall be designated or approved by Landlord.

It is understood that at any time or times all or any of the elevators in the Building, if any, at the option of the Landlord, be automatic elevators, and Landlord shall be under no obligation to furnish an elevator operator for any automatic elevator.  If Landlord shall at any time or times furnish any elevator operator for any automatic elevator, Landlord may discontinue furnishing such elevator operator and there shall be no diminution, reduction or abatement of rent by reason thereof.  Landlord agrees to maintain the automatic elevator that serves the basement to the first floor of the building.

Landlord reserves the right, without liability to Tenant and without constituting any claim of constructive eviction, to stop or interrupt any heating, elevator, escalator, lighting, ventilating, air conditioning, gas, steam, power, electricity, water, cleaning or other similar or dissimilar service and to stop or interrupt the use of any Building facilities at such times as may be necessary and for as long as may be reasonably be required by reasons of accidents, strikes, or the making of repairs, alterations or improvements, or inability to secure a proper supply of fuel, gas, steam, water, electricity, labor or supplies, or by the reason of any other similar or dissimilar cause beyond the reasonable control of Landlord.  No such stoppage or interruption shall entitle Tenant to any diminution or abatement of rent or other compensation nor shall this Lease or any of the obligations of Tenant be affected or reduced by reason of any such stoppage or interruption.  The provisions hereof do not, however, obligate Landlord to furnish any service or facility not otherwise specifically set forth in this Lease as an obligation on the part of Landlord.

22. <u>Lease Contains All Agreements - No Waivers.</u>  This Lease contains all of the covenants, agreements, terms, provisions and conditions relating to the leasing of the premises hereunder, and Landlord has not made and is not making, and Tenant in executing and delivering this Lease is not relying upon, any warranties, representations, promises or statements, except to the extent that the same may expressly be set forth in this Lease.

The failure of Landlord to insist in any one or more instances upon the strict performance of any one of the covenants, agreements, terms, provisions or conditions of this Lease or to exercise any election herein contained shall not be construed as a waiver or relinquishment for the future of such covenant, agreement, term, provision, condition or election, but the same shall continue and remain in full force and effect. No waiver by Landlord of any covenant, agreement, term, provision or condition of this Lease shall be deemed to have been made unless expresses in writing and signed by Landlord. No surrender of the premises or of any remainder of the term of this Lease shall be valid unless accepted by Landlord in writing.  No payment by Tenant or receipt by Landlord of a lesser amount than any installment or payment of any rent or additional rent due shall be deemed to be other than on account of the amount due, and no endorsement or statement on any check or payment of any rent or additional rent shall be deemed an accord and satisfaction.  Landlord may accept such check or payment without prejudice to Landlord's right to recover the balance of such installment or payment of any rent or additional rent, or pursue any remedy or remedies available to Landlord.  The receipt and retention by Landlord of fixed fee or other sum or charge payable hereunder from anyone other than Tenant shall not be deemed a waiver of the breach by Tenant of any covenant, agreement, term, provision or condition herein contained, or the acceptance of such other person as a tenant, or a release of Tenant from the further performance by Tenant of the covenants, agreements, terms, provisions and conditions herein contained.  The receipt and retention by Landlord of fixed rent, additional rent or other sum or charge with knowledge of the breach of any covenant, agreement, term, provision or condition herein contained shall not be deemed ma waiver of such breach.  No executory agreement hereafter made between Landlord and Tenant shall be effective to change, modify, waive, release, discharge, terminate or effect an abandonment of this Lease, in whole or in part, unless such executory agreement is in writing, refers expressly to this Lease and is signed by the party against whom enforcement of the change, modification, waiver, release, discharge or termination or effectuation of the abandonment is sought.

The Lease shall not be binding upon Landlord unless and until it shall have been executed by Landlord and Tenant and a fully executed counterpart of this Lease shall have been delivered by Landlord to Tenant.

23. <u>Parties Bound.</u>  The covenants, agreements, terms, provisions and conditions of this Lease shall bind and benefit the respective successors, assigns and legal representatives of the parties hereto with the same effect as if mentioned in each instance where a party hereto is named or referred to, except that no violation of the provision of Article 7 hereof shall operate to vast any rights in any successor, assignee or legal representative of Tenant and that the provisions of this Article 23 shall not be construed as modifying the conditions of limitation contained in Article 16 hereof.  It is understood and agreed, however, that the

covenants and obligations on the part of Landlord under this Lease shall not be binding upon Landlord herein named with respect to any period subsequent to the transfer of its interest in the Building, that in the event of such transfer said covenants and obligations shall thereafter be binding upon each transferee of such interest of Landlord herein named, but only with respect to the period ending with a subsequent transfer of such interest, and that a lease of the entire interest shall be deemed a transfer within the meaning of this Article 23.

24. Curing Tenant's Defaults - Additional Rent. If Tenant shall default in the performance of any covenant, agreement, term, provision or condition herein contained, Landlord, without thereby waiving such default, may perform the same for the account and at the expense of Tenant, without notice in a case of emergency, and in any other case if such default continues after 3 days from the date of giving by Landlord to Tenant of written notice of intention to do so. Bills for any expense incurred by Landlord in connection with any such performance by Landlord for the account of Tenant, and bills for all costs, expenses and disbursements of every kind and nature whatsoever, including, but not limited to, attorneys fees involved in collecting or endeavoring to collect the fixed rent or additional rent or other sum or charge or any part thereof or enforcing or endeavoring to enforce any rights against Tenant, under or in connection with this Lease, or pursuant to law, including (without being limited to) any such cost, expense and disbursement involved in instituting and prosecuting summary proceedings, as well as bills for any property, material, labor or services provided, furnished or rendered, or caused to be provided, furnished or rendered, by Landlord to Tenant including (without being limited to) electric lamps and other equipment, construction work done for the account of Tenant, water, ice, drinking water, drinking cups, towel and other services, as well as for any charges for any additional elevator, heating, air conditioning or cleaning services incurred under Article 21 hereof and any charges for other similar or dissimilar services incurred under this Lease, may be sent by Landlord to Tenant monthly, or immediately, at Landlord's option, and shall be due and payable in accordance with the terms of said bills, and if not paid when due, the amounts thereof shall immediately become due and payable as additional rent under this Lease. In the event that Tenant is in arrears in payment of fixed rent or additional rent, Tenant waives Tenant's right, if any, to designate the items against which any payments made by Tenant are to be credited, and Tenant agrees that Landlord may apply any payments made by Tenant to any items Landlord sees fit, irrespective of and not withstanding any designation or request by Tenant as to the items against which any such payments shall be credited. Landlord reserves the right, without liability to Tenant and without constituting any claim of eviction or constructive eviction, to suspend furnishing or rendering to Tenant any property, material, labor, utility or other service, wherever Landlord is obligated to furnish or render the same at expense of Tenant, in the event that (but only for so long as) Tenant is in arrears in paying Landlord therefor or Tenant is in default in the keeping, observance or performance of any covenant, agreement, term, provision and condition of this Lease.

25. Intentionally Omitted.

26. Miscellaneous.
(a) Notwithstanding anything contained in this Lease to the contrary, Tenant covenants and agrees that Tenant will not use the premises or any part thereof, or permit the premises or any part thereof to be used as a restaurant and/or bar and/or for the use of confectionery and/or soda and/or beverages and/or sandwiches and/or ice cream and/or baked goods or for the preparation, dispensing or consumption of food or beverages in any manner whatsoever.
(b) If, in connection with obtaining financing for the Building, a banking, insurance or other recognized institutional lender shall request reasonable modifications in and to this Lease as a condition to such financing, Tenant will consent thereto, provided that such modifications do not increase the financial obligations of Tenant hereunder pursuant to Article 1 and hereof, or materially and adversely affect the leasehold interest hereby created.
(c) If, at any time during the last month of the term of this Lease, Tenant shall have removed all or substantially all of the Tenant's property from the premises, Landlord may, and Tenant hereby irrevocably grants to Landlord a license to, immediately enter and alter, renovate and redecorate the premises, without elimination, diminution or abatement of fixed or additional rent, or incurring liability to Tenant for any compensation, and such acts shall have no effect upon this Lease.
(d) Tenant shall not place a load upon any floor of the premises exceeding the floor load per square foot which such floor was designated to carry and which is allowed by law. Landlord reserves the right to prescribe the weight and position of all safes which must be placed by Tenant, at Tenant's expense, so as to distribute the weight. Business machines and mechanical equipment shall be placed and maintained by Tenant, at Tenant's expense, in settings sufficient in Landlord's judgment, to absorb and prevent vibration, noise and annoyance.
(e) Without incurring any liability to Tenant, Landlord may permit access to the premises and open the same, whether or not Tenant shall be present, upon demand of any receiver, trustee, assignee for the benefit of creditors, sheriff, marshal or court officer entitled to, or reasonably purporting to be entitled to, such access for the purpose of taking possession of, or removing, Tenant's property or for any other lawful purpose (but this provision shall not be deemed a recognition by Landlord that the person or official making such demand has any right or interest in or to this Lease, or in or to the premises), or upon demand of any representative of the fire, police, building, sanitation or other department of any city, county, town, village, state or federal government.
(f) Tenant shall not be entitled to exercise any right of termination or other option granted to it by this Lease at any time when Tenant is in default in the performance, observance or keeping of any of the covenants, agreements, terms, provisions or

conditions on its part to be performed, observed or kept under this Lease.

(g) Tenant shall not place or permit to be placed any vending machines in the premises, except with the prior written consent of Landlord in each instance.

(h) Tenant shall not occupy any space in the Building (by assignment, sublease or otherwise) other than the premises hereby demised, except with the prior written consent of Landlord in each instance.

(i) Tenant will not clean, nor require, permit, suffer or allow any window in the premises to be cleaned, from the outside in violation of Section 202 of the Labor Law or of the rules of any other board or body or governmental authority having or asserting jurisdiction.

(j) If, pursuant to any provision of this Lease, Landlord shall withhold its consent or approval or permission to any thing or matter requested by Tenant, Tenant shall not be entitled to bring or institute any action or other proceeding for damages or for any other remedy of any kind or nature whatsoever (unless, as provided elsewhere in this Lease, Landlord has agreed that its consent or approval or permission will not be unreasonably withheld or delayed, in which instance Tenant may bring or institute an action or other proceeding solely for the purpose of compelling the granting of such consent or approval or permission) and Tenant agrees to waive, and does hereby waive, any rights that it may have to bring any such action or other proceeding (except as herein otherwise provided).

(k) Tenant shall look solely to the estate and interest of Landlord, its successors and assigns in the Land and Building for the collection of a judgment or other judicial process requiring the payment of damages or money by Landlord or in the event of any default by Landlord hereunder and no other property or assets of Landlord (or, if Landlord is a partnership, of any partner of Landlord), shall be subject to levy, execution or other enforcement procedure for the satisfaction of Tenant's remedies under and with respect to this Lease, the relationship of Landlord and Tenant hereunder, Tenant's use and occupancy of the premises or otherwise.

27. Pornographic Uses Prohibited. Tenant agrees that the value of the premises and the reputation of Landlord will be seriously injured if the premises are used for any obscene or pornographic purposes or any form of commercial sex establishment. Tenant agrees that Tenant will not bring or permit any obscene or pornographic material in, to or on the premises, and shall not permit or conduct any obscene, nude, or semi-nude live performances in or on the premises, nor permit use of the premises for nude modeling, rap sessions, or as a so-called rubber goods shops, or as a sex club of any sort, or as a "massage parlor". Tenant agrees further that Tenant will not permit any of these uses by any subtenant of the premises or any assignee of this Lease. This Article shall directly bind any successors in interest of Tenant. Tenant agrees that if, at any time, Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this Lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects of instrument that are primarily concerned with lewd or prurient sexual activity. Obscene material is defined herein as it is in Penal law 235.00.

28. Business Conduct. Tenant, recognizing that the Building has been developed and is being maintained as a location for an outstanding type of business occupancy, and as a special inducement to Landlord to enter into this Lease, covenants and agrees that at all times (i) Tenant's use of the premises throughout the term will be consistent with the character and dignity of the Building, (ii) the business to be conducted at, through and from the premises will be first-class quality and reputable in every respect, (iii) the sales methods employed in said business, as well as all other elements of merchandising, display and advertising, will be dignified and in conformity with the highest standards of practice in Tenant's industry and (iv) the appearance of the premises (including the lighting and other appearances thereto), the appearance and deportment of all personnel employed therein, and the appearance, number, location, nature and subject matter of all displays and exhibits placed or installed in or about the premises, and of any signs, lettering announcements, or any other kinds of forms of inscriptions displayed in or about the premises will be only such as meet with Landlord's approval, and if at any time disapproved by Landlord, Tenant shall remove the basis for such disapproval in such manner and within such time as may be specified by Landlord in a written notice given by it to Tenant for such purpose.

Tenant will, promptly after demand by Landlord, and as often as each such demand shall occur, forthwith discontinue selling, or offering for sale, or permitting to be sold, or otherwise dealing in, or exhibiting, or advertising, in the premises, or any part thereof, any article or merchandise to which Landlord may object. Tenant will, promptly after demand by Landlord, and as often as each such demand shall occur, forthwith discontinue any advertisement, sign, notice, object, poster, exhibit and/or display in the premises, or any part thereof, to which Landlord may object.

Nothing contained in this Article or elsewhere in this Lease shall be construed to permit any use of the premises that is not within the permitted uses of the premises as specifically set forth in this Lease.

The violation by Tenant of any of the covenants, agreements, terms, provisions and conditions contained in this Article shall be deemed a material and substantial default by Tenant under the terms of this Lease. Mention in this Article of any particular remedy shall not preclude Landlord from any other remedy in law or in equity. Any demand or demands by Landlord pursuant to the provisions of this Article and compliance therewith by Tenant shall not impair this Lease or affect Tenant's liability hereunder, nor shall Tenant be entitled to any compensation or diminution or abatement of rent by reason thereof.

29. Hazardous Waste. Throughout the term of this Lease, Tenant shall not undertake or permit any Environmental

Activity (as such term is hereinafter defined) other than (i) in compliance with all applicable laws and ordinances and all rules, orders and regulations, present or future, ordinary or extraordinary, foreseen or unforeseen) of any federal, state or local governmental authority (hereinafter collectively referred to as "Legal Requirements"), and (ii) in such a manner as shall keep the premises, the Building and the Land free from any lien imposed pursuant to any Legal Requirement in respect of such Environmental Activity. Tenant shall take all necessary steps to ensure that any Environmental Activity undertaken or permitted at the premises is undertaken in a manner as to provide prudent safeguards against potential risks to human health or the environment. Tenant shall notify Landlord within 24 hours of the release of any Hazardous Materials (as such term is hereinafter defined) from or at the premises which could form the basis of any claim, demand or action by any party. Landlord shall have the right, from time to time, at Tenant's expense, to conduct an environmental audit or such other examinations, tests, inspections and reviews of the premises as Landlord, in its sole discretion, shall deem necessary, appropriate or desirable and Tenant shall cooperate in the conduct of any such environmental audit, examination, test, inspection or review. If Tenant shall breach the covenants provided in this Article, then, in addition to any other rights and remedies which may be available to landlord pursuant to this Lease or otherwise at law, Landlord may require Tenant to take all actions, or to reimburse Landlord for the costs of any and all actions taken by Landlord, as are necessary, appropriate or desirable to cure such breach. For purposes of this Article, the term "Environmental Activity" means any use, storage, installation, existence, release, threatened release, discharge, generation, abatement, removal, disposal, handling or transportation from, under, into or on the leased premises of (a) any "hazardous substance" as defined in any federal statute, (b) petroleum, crude oil or any fraction thereof, natural gas or synthetic gas used for fuel, and (c) any additional substances or materials which at such time are classified or considered to be hazardous or toxic under the laws of the State of New York or any other Legal Requirements the materials described in clauses (a) through (c) being collectively referred to as "Hazardous Materials". The provisions of subparagraph (j) of Article 6 of this Lease shall be applicable to any failure by Tenant to comply with or keep or perform the provisions of this Article. The obligations of Tenant under this Article shall survive the expiration or sooner termination of the term of this Lease.

30. **Inability to Perform.** This Lease and the obligations of Tenant to pay fixed rent, additional rent and all other sums and charge hereunder and perform, observe and keep all of the other covenants, agreements, terms, provisions and conditions hereunder on the part of Tenant to be performed, observed and kept shall in no wise be affected, impaired or excused because Landlord is unable to fulfil any of its obligations under this Lease or is unable to supply or is delayed in supplying any service expressly or impliedly to be supplied or is unable to make or is delayed in making any repairs, replacement, additions, alterations or decorations or is unable to supply or is delayed in supplying any equipment or fixtures if Landlord is prevented or delayed from so doing by reason of strikes or labor troubles or any other similar or dissimilar cause whatsoever beyond Landlord's reasonable control, including, but not limited to, government preemption in connection with a national energy or by reason of any rule, order or regulation of any department or subdivision thereof of any governmental agency or by reason of the conditions of supply and demand which have been or are affected by war, hostilities or other similar or dissimilar emergency.

31. **Adjacent Excavation - Shoring.** If an excavation shall be made upon land adjacent to or under the Building, or shall be authorized or contemplated to be made, Tenant shall afford to the person causing or authorized to cause such excavation, license to enter upon the premises for the purpose of doing such work as said person shall deem necessary or desirable to preserve the Building from injury or damage and to support the same by proper foundations without any claim for damages or indemnity against Landlord, or diminution or abatement of fixed rent, additional rent or any other sum or charge payable by Tenant hereunder.

32. **Broker.** Tenant states, with respect to the terms, conditions and provisions of this Lease as set forth herein, that no real estate broker, agent or finder brought about the terms and conditions of this Lease. The Landlord agrees that the Landlord shall be liable for the payment of brokerage commissions that are due, if any.

33. **ARTICLE HEADINGS.** The Article headings of this Lease are for convenience only and are not to be considered in construing the same.

34. **Holdover.** If Tenant shall hold over after the expiration of the term of this Lease, such holding over shall be deemed a month-to-month tenancy, which tenancy may be terminated pursuant to applicable law, and until Tenant has vacated the premises if agrees to pay the Landlord for the use and occupancy of the premises an amount equal to two and one-half times the total of the fixed rent and additional rent payable pursuant to Article 24 then being paid or payable by Tenant to Landlord.

35. **Security.** Tenant has deposited with Landlord the sum of $ 4,400.00 upon signing of lease as security for the faithful performance and observance by tenant of the terms, provisions and conditions of this Lease. In the event that Tenant is in default of any of the terms, conditions and provisions of this Lease, Landlord may, but is not obligated to, apply such amount of the Security to the payment of Rent and Additional Rent and the cost and expense of re-letting the demised premises whether or not incurred after summary proceedings are instituted. In the case of the sale or transfer the Security Deposit to the successor owner/lessee. Tenant further covenants that Tenant shall not assign or encumber the Security Deposit and tat Landlord, its successors and assigns shall not be bound by any such act taken by Tenant.

36. **Landlord's Interest in Premises.** Landlord's interest in the premises is derived pursuant to the terms of a certain lease (herein referred to as the "Prime Lease") dated as of      October 22, 2012      (as thereafter modified and amended) between Glenroy Paul                           as landlord (herein referred to as "Owner", and Landlord, as successor in interest to Ming Q Inc "The Premise shall be used for a nail salon , as tenant, covering certain commercial space in the Building as more specifically set forth thereon. Accordingly, notwithstanding anything to the contrary contained in this Lease, this Lease is, in fact, a sublease. For the purposes of this Lease, the Prime Lease shall be, and shall be deemed to be, included in the term "underlying lease" wherever it appears and Owner shall be, and shall be deemed to be, included as a "lessor under an underlying lease".

Tenant understands that, in order for Landlord to lease and demise the premises to Tenant for the term set forth in Article 1 hereof, Landlord is required to exercise certain options to extend the term of the Prime Lease as therein set forth. Landlord agrees that, so long as Tenant is not in default of any of the covenants, agreements, terms, provisions and conditions of this Lease on its part to be kept, observed and performed, beyond any applicable cure period, Landlord shall timely exercise such options to the intent and purposes that the term of this Lease shall be as set forth in said Article 1.

If, at anytime during the term of this Lease, Tenant shall claim that Landlord is in default or in breach of its obligations hereunder or is otherwise liable to Tenant and such default or breach or liability shall result from, or be attributable to, the default or failure of owner, Tenant agrees that Landlord shall not be liable or responsible to Tenant in connection therewith; provided, however, Landlord agrees to assign to Tenant any cause of action that Landlord may have against Owner as a result of such default or failure.

37. **Quiet Enjoyment.** Landlord covenants that if, and so long as, Tenant keeps and performs each and every covenant, agreement, term, provision and condition herein contained on the part and on behalf of Tenant to be kept and performed, Tenant shall quietly enjoy the premises without hindrance or molestation by Landlord or by any other person lawful claiming the same, subject to the covenants, agreements, terms, provisions and conditions of this Lease and to the ground leases and/or underlying lease and/or mortgages to which this Lease is subject and subordinate as hereinbefore set forth.

38. **Tenant's Right to Cancel.** At any time during the term hereof, Tenant, upon at least six (6) months prior written notice to Landlord, may elect to cancel and terminate this Lease and the term and estate hereby granted as of the date set forth in said notice by Tenant to Landlord (hereinafter referred to as the "Termination Date". In the event (a) Tenant shall vacate and surrender the premises on or before the Termination Date and Tenant shall not otherwise be in default of any of the covenants, agreements, terms, provisions and conditions of this Lease on its part to be kept, observed and performed hereunder and (b) Landlord shall have re-let the premise for a term commencing on the date immediately following the Termination Date, Landlord shall return to Tenant the $      N/A      referred to in Article 1 hereof; provided, however, if, on the Termination Date Landlord shall not have re-let the premises, Landlord shall be entitled to retain said $      N/A      until such time as Landlord shall have re-let the premises and, at the time of such re-letting, Landlord shall only be obligated to return to Tenant an amount equal to $      N/A      less $      N/A      for each calendar month or part thereof occurring immediately after the expiration of the Termination Date during which Landlord did not re-let the premises.

IN WITNESS WHEREOF, Landlord and Tenant have duly executed this Lease as of the day and year first above written.

LANDLORD

*Glenroy Paul*

Mr. Glenroy Paul

PENNY E. CARNEGIE
Notary Public State of New York
No 01CA6061762
Qualified in Kings County
My Commission Expires  1/4/2014

10 24
24

Attest/Witness:

TENANT

Ç HE Q1TIAN

Cha FCQ vwQ

Ming Q. Inc.

Attest/Witness: Sworn to before me on this 04th Day of October, 2012.

YU HOWE
Notary Public, State of Ne.
No. 02HO615654
Qualified in New York
Commission Expires Dec 4 2014

# LEASE RIDER FOR 974 RUTLAND ROAD

1. Lease Term of 8 years (with the additional 5 years option the Landlord annual increase shall be 5% per year)
2. Rent to be $2,200.00 per month with an annual 2% increase
3. Tenant to have 2½ months for renovation from the date signing of lease, during this time the rent will be waived and payment to begin February 1, 2013.
4. Tenant is responsible for two month security & one month rent.
5. Landlord will provide cold water and real estate tax & the existing heating.
6. Tenant is responsible for providing addition heat to space.
7. Tenant is responsible Trash is removal of the store before (Monday, Wednesday & Friday) Landlord & Tenant
8. Tenant & Landlord is to keep sidewalk clean daily.
9. Tenant & Landlord Removal of snow and ice
10. Tenant is responsible for paying their own insurance for their company worker comp, damages, liability, fire
11. Tenant to provide a spear key to Landlord.
12. Tenant is responsible for all repairs, electricity, plumbing in your shop.
13. Tenant is responsible for your heating system and hot water tank.
14. Tenant to pay 20% of the excessive water bill. Current base amount is $690.00 per every three months.

HE 41 TIAN          Che Fu Gung
Tenant: Ming Q. Inc.

Glenroy Paul
Landlord: Glenroy Paul

FENNY E. CARNEGIE
Notary Public State of New York
No 01CA6081762
Qualified in Kings County
My Commission Expires 11/20/2014

10/24/2012

# EXHIBIT B

B6E (Official Form 6E) (4/13)

In re    **Glenroy Paul**
_____
Debtor

Case No. ___**1-13-44918**_____

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS - AMENDED

A complete list of claims entitled to priority, listed separately by type of priority, is to be set forth on the sheets provided. Only holders of unsecured claims entitled to priority should be listed in this schedule. In the boxes provided on the attached sheets, state the name, mailing address, including zip code, and last four digits of the account number, if any, of all entities holding priority claims against the debtor or the property of the debtor, as of the date of the filing of the petition. Use a separate continuation sheet for each type of priority and label each with the type of priority.

The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. If a minor child is a creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m).

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H-Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community." If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Report the total of claims listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all claims listed on this Schedule E in the box labeled "Total" on the last sheet of the completed schedule. Report this total also on the Summary of Schedules.

Report the total of amounts entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

Report the total of amounts not entitled to priority listed on each sheet in the box labeled "Subtotals" on each sheet. Report the total of all amounts not entitled to priority listed on this Schedule E in the box labeled "Totals" on the last sheet of the completed schedule. Individual debtors with primarily consumer debts report this total also on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding unsecured priority claims to report on this Schedule E.

**TYPES OF PRIORITY CLAIMS** (Check the appropriate box(es) below if claims in that category are listed on the attached sheets)

■ **Domestic support obligations**

Claims for domestic support that are owed to or recoverable by a spouse, former spouse, or child of the debtor, or the parent, legal guardian, or responsible relative of such a child, or a governmental unit to whom such a domestic support claim has been assigned to the extent provided in 11 U.S.C. § 507(a)(1).

☐ **Extensions of credit in an involuntary case**

Claims arising in the ordinary course of the debtor's business or financial affairs after the commencement of the case but before the earlier of the appointment of a trustee or the order for relief. 11 U.S.C. § 507(a)(3).

☐ **Wages, salaries, and commissions**

Wages, salaries, and commissions, including vacation, severance, and sick leave pay owing to employees and commissions owing to qualifying independent sales representatives up to $12,475* per person earned within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(4).

☐ **Contributions to employee benefit plans**

Money owed to employee benefit plans for services rendered within 180 days immediately preceding the filing of the original petition, or the cessation of business, whichever occurred first, to the extent provided in 11 U.S.C. § 507(a)(5).

☐ **Certain farmers and fishermen**

Claims of certain farmers and fishermen, up to $6,150* per farmer or fisherman, against the debtor, as provided in 11 U.S.C. § 507(a)(6).

☐ **Deposits by individuals**

Claims of individuals up to $2,775* for deposits for the purchase, lease, or rental of property or services for personal, family, or household use, that were not delivered or provided. 11 U.S.C. § 507(a)(7).

■ **Taxes and certain other debts owed to governmental units**

Taxes, customs duties, and penalties owing to federal, state, and local governmental units as set forth in 11 U.S.C. § 507(a)(8).

☐ **Commitments to maintain the capital of an insured depository institution**

Claims based on commitments to the FDIC, RTC, Director of the Office of Thrift Supervision, Comptroller of the Currency, or Board of Governors of the Federal Reserve System, or their predecessors or successors, to maintain the capital of an insured depository institution. 11 U.S.C. § 507 (a)(9).

☐ **Claims for death or personal injury while debtor was intoxicated**

Claims for death or personal injury resulting from the operation of a motor vehicle or vessel while the debtor was intoxicated from using alcohol, a drug, or another substance. 11 U.S.C. § 507(a)(10).

\* *Amount subject to adjustment on 4/01/16, and every three years thereafter with respect to cases commenced on or after the date of adjustment.*

__**2**__ continuation sheets attached

Software Copyright (c) 1996-2013 - Best Case, LLC - www.bestcase.com

Best Case Bankruptcy

B6E (Official Form 6E) (4/13) - Cont.

In re    **Glenroy Paul**
_____,    Case No. ___**1-13-44918**___
                                    Debtor

## SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS - AMENDED
### (Continuation Sheet)

Domestic Support Obligations
TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | C O D E B T O R | H W J C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | C O N T I N G E N T | U N L I Q U I D A T E D | D I S P U T E D | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. | | | | | | | | | |
| **Child Support Enforcement** PO Box 14 Albany, NY 12201 | - | | | | | | 324.00 | 0.00 | 324.00 |
| Account No. | | | For Notice Purpose Only | | | | | | |
| **Nancy Jean Baptiste** 10524 Ave K Brooklyn, NY 11236 | - | | | | | | 0.00 | 0.00 | 0.00 |
| Account No. | | | For Notice Purpose Only | | | | | | |
| **New York State Child Support** 40 North Pearl Street #13C Albany, NY 12243 | - | | | | | | 0.00 | 0.00 | 0.00 |
| Account No. | | | | | | | | | |
| | | | | | | | | | |
| Account No. | | | | | | | | | |
| | | | | | | | | | |

Sheet __1__ of __2__ continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

Subtotal
(Total of this page)

| | |
|---|---|
| 0.00 | |
| 324.00 | 324.00 |

B6E (Official Form 6E) (4/13) - Cont.

In re    **Glenroy Paul**                                                                 Case No.    **1-13-44918**
                                                   Debtor

# SCHEDULE E - CREDITORS HOLDING UNSECURED PRIORITY CLAIMS - AMENDED
### (Continuation Sheet)

**Taxes and Certain Other Debts
Owed to Governmental Units**

TYPE OF PRIORITY

| CREDITOR'S NAME, AND MAILING ADDRESS INCLUDING ZIP CODE, AND ACCOUNT NUMBER (See instructions.) | CODEBTOR | Husband, Wife, Joint, or Community H / W / J / C | DATE CLAIM WAS INCURRED AND CONSIDERATION FOR CLAIM | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM | AMOUNT NOT ENTITLED TO PRIORITY, IF ANY | AMOUNT ENTITLED TO PRIORITY |
|---|---|---|---|---|---|---|---|---|---|
| Account No. <br><br>**NYC** <br>**Manhattan Payment Center** <br>**PO Box 410** <br>**Church Street Station** <br>**New York, NY 10008-0410** | | - | **Violations** | | | | 2,535.79 | 0.00 | 2,535.79 |
| Account No. **xxxxxx 0005** <br><br>**NYC Department of Finance** <br>**PO Box 680** <br>**Newark, NJ 07101-0680** | | - | **Property Tax Bill** | | | | 7,559.85 | 7,559.85 | 0.00 |
| Account No. **xxxxxx 3-001** <br><br>**NYC Water Board** <br>**Dep/BCS Customer Service** <br>**PO Box 739055** <br>**Elmhurst, NY 11373-9055** | | - | **Water Bill** | | | | 546.78 | 546.78 | 0.00 |
| Account No. | | | | | | | | | |
| Account No. | | | | | | | | | |

Sheet  _2_  of  _2_  continuation sheets attached to
Schedule of Creditors Holding Unsecured Priority Claims

| | Subtotal (Total of this page) | 10,642.42 | 8,106.63 / 2,535.79 |
|---|---|---|---|
| | Total (Report on Summary of Schedules) | 10,966.42 | 8,106.63 / 2,859.79 |

# EXHIBIT C

UNITED STATES BANKUPTCY COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

In re Glenroy Paul

            Debtor

———————————————————————X

          Chapter 13
          Case No. 1-13-44918-cec

          AMENDED AFFIDAVIT
          OF CONTRIBUTION

State of New York  )
         ) :
County of Kings   )

   The undersigned, being duly sworn hereby deposes and says:

   1. I am the above captioned Debtor. I operate a gift shop- located at my home at 974 Rutland Road, Brooklyn, New York 11212.

   2. The assets of the gift shop consist of a cash register, a refrigerator, a chair and inventory listed on the annexed list hereto with a total value of $1000.00.

          /S/ Glenroy Paul
          Glenroy Paul

Sworn to before me on
15th day of October 2013

__/s/ _____
Notary Public

School Bags 28

Ladies Bags 22

Shopping Bags 12

Crayola 22

School pens 21

, , , , Sharpner 8

Rulers 21

Hand Towels 27

Powder Soap 22

Bathing Soap 60

Downey 18

Clorox 10

Tea cups 26

Dish washing Liquid 49 Pcs

Paper Towel 78 Pc

note Books 22 Pc

Sock (Kids) 36 Pc

men Dress Sock 22 Pc

Ladies Socks 22 Pcs

Calling Card 51 Pcs

Dish Draines 6 Pc

Costume

Tea Cups

Radiant Star gift

974 Rutland Rd

Brooklyn N.Y. 11212

Picture frame 37 Pcs

Food Containers 32 Pcs

Island T shirt 62 Pcs

Tang Tops 29 Pc

Bath Towels 6 Pc

Storage Containers 34 Pcs

Kids Wallet 26 Pc

gift Set 13

Rat Trap 17 Pc

Hand Soap 6 Pcs

Foil Pans 126 Pcs

Party Decaration 3

Led Pencil 9 Pk

, , , , , , , Holder 8 Pc

Binders 19 Pc

Incense 15 PKs

Baby oil 5 Pcs

Bandanas  110 Pc
Flags (Island) 112 Pc
Kids Toys  36 Pc
Table Cloth
Table Napkin 8 Pk
Body lotion  20
Clorox clean up 23
Adult  Sun glasses  26 Pc
Hellum Tank  1 Pc
Rubbing Alchol  35
Lysol Sp Disinfectant  9 Pc
Vos  18 Pc
Flashlight  8 Pc
Hair grease  27Pc
Shopping Cart  4 Pc
Air freshner Spray  26 Pc
Dust Pan  10 Pc
Gabbage Cans  6 Pc
Tables  4 Pc
Body oils  60 Bottles
Mops  6 Pc
B

Disposable Cups 69
Plates 78
winter Scarf and hats  24Pc
gift Bags  100 Pcs
Clocks  4 Pcs
gift Paper  2 2 Pc
Detrol Wash  12 Pc
Disposable Container  122.
Candles  52 Pc
Kids Water gun  10 Pcs
Coloring Books 2 2 Pcs
Battries  42 Pks
Phone Charger  6 Pc
Kids foot Ball  10 Pcs
Kids Sun glasses  27 Pc
Index Card  28 Pcs
Envelop  18 Pk
Religious plaque 18 Pc
Religious Decoration 19

# EXHIBIT D

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------}(                       Chapter 13

IN RE:    Glenroy Paul
                                                Case No.:    1-13-44918

                    Debtor(s)                   **AMENDED CHAPTER 13 PLAN**

------------------------------------------------}(

1.  The future earnings of the debtor(s) are submitted to the supervision and control of the
trustee, and the debtor(s) shall pay to the trustee for a total of  60  months, the sum of:
      $  539.10  commencing  September 2013  through and including  August 2018  for a period of  60
months;

2.  From the payments so received, the trustee shall make disbursements as follows:
      (a)      Full payment in deferred cash payments of all claims entitled to priority under
11 U.S.C. §507.
      (b)      Holders of allowed secured claims shall retain the liens securing such claims
and shall be paid as follows:

ALL POST-PETITION PAYMENTS, INCLUDING BUT NOT LIMITED TO, MORTGAGE PAYMENTS, VEHICLE
PAYMENTS, REAL ESTATE TAXES and INCOME TAXES, TO BE MADE OUTSIDE THE PLAN BY THE DEBTOR(S).

_____(mortgage holder) to be paid pre-petition arrears in the sum of $_ plus_% interest over the life of the plan.

      (c)      Subsequent to distribution to secured creditors, dividends to unsecured creditors whose claims are
duly allowed as follows: PRO RATA distribution to all timely filed proofs of claim of not less than  100  %(percent).

3. All lease agreements are hereby assumed, unless specifically rejected as follows:
      Other Party                          Description of Contract or Lease
      1. Ming Q Inc.                       Nail Salon Tenant 5 year lease of commercial space.
      974 Rutland Road
      Brooklyn, New York 11212
      2. Mr. Matthew Walker                Tenant 2 year lease.
      974 Rutland Road
      Brooklyn, New York 11212
      3. Ms. Sherry Peters                 Tenant 2 year lease.
      974 Rutland Road
      Brooklyn, New York 11212

4. During the pendency of this case, the debtor(s) will provide the Trustee with signed copies of filed federal and state
tax returns for each year no later than April 15th of the year following the tax period. Indicated tax refunds are to be paid to
the Trustee upon receipt; however, no later than June 15th of the year in which the tax returns are filed.

Title to the debtor(s) property shall revest in the debtor(s) upon completion of the plan, unless otherwise provided in the
Order confirming this plan. Throughout the term of this plan, the debtor(s) will not incur post-petition debt over $1,500.00
without written consent of the Chapter 13 trustee or the Court.


/s/ Glenroy Paul
Glenroy Paul
Debtor

Dated: _____


                                    /s/ ARLENE GORDON-OLIVER, ESQ.
                                    ARLENE GORDON-OLIVER, ESQ.
                                    Attorney for Debtor

# EXHIBIT E

UNITED STATES BANKUPTCY COURT
EASTERN DISTRICT OF NEW YORK
———————————————————————————X

In re Glenroy Paul

                         Debtor (s)

———————————————————————————X

Chapter 13
Case No. 1-13-44918-cec

AFFIDAVIT OF CONTRIBUTION

State of New York    )
                      ) :
County of Kings     )

      The undersigned, being duly sworn hereby deposes and says:

      1. I am the wife of the above referenced Debtor. I reside with my husband at 974 Rutland Road, Brooklyn, New York 11212.

      2. I currently contribute my entire monthly net salary in the amount of $2,984.74 to my husband's monthly household expenses and to fund a Chapter 13 Plan.

*Charlene McBurnie*
Charlene McBurnie

Sworn to before me on
24 day of September 2013

Notary Public

PENNY E. CARNEGIE
Notary Public State of New York
No 01CA6061762
Qualified in Kings County
My Commission Expires 12/20/14

September 25, 2013

Advice No. **76964881**

Deposited in the Account(s) of    CHARLENE C MCBURNIE

**NON-NEGOTIABLE**

| Direct Deposit Distribution | Account Number(s) not displayed to protect your privacy | |
|---|---|---|
| Transit # | Account Type | Deposit |
| 124003116 | Checking | 2,042.93 |
| | | |
| Total | | 2,042.93 |

**NET DISTRIBUTIONS**

| | |
|---|---|
| Advice # 76964881 | 2,042.9 |
| Check # | |
| Total | 2,042.9 |

| Thomas P. DiNapoli State Comptroller | CHARLENE C MCBURNIE | | | | | |
|---|---|---|---|---|---|---|

| | Total Gross | Fed Taxable |
|---|---|---|
| Current | 5,102.35 | 2,86 |
| YTD | 61,126.13 | 55,93 |

| | |
|---|---|
| Advice # | 76964881 |
| Advice Date | 09/25/2013 |
| Department ID | 28108 |

| Pay Start Date | 08/29/2013 | Negotiating Unit | 05 |
|---|---|---|---|
| Pay End Date | 09/11/2013 | Retirement System | ERS |
| NYS EMPLID | | | |

**Net Pay** 2,042.93

Pay Rate  55,622.00

**EARNINGS**

| | Hrs/Days | Current Earnings | Hrs/Days | YTD Earnings |
|---|---|---|---|---|
| Regular Pay Salary Employee | | | | |
| Geographic Pay | | 2,133.44 | | 42,142.55 |
| Inconvenience Pay - Full | | 646.66 | | 12,938.62 |
| Location Pay | | 22.05 | | 441.00 |
| Shift Differential | | 114.07 | | 2,321.40 |
| 12-13 PEF DRP -1.847% | | 184.11 | | 3,662.20 |
| | | | | -314.45 |

**TAX DATA**

| | Federal | State | NYC | Yonker |
|---|---|---|---|---|
| Marital Status | | | | |
| Allowances | M | M | M | |
| Addl. Amt. | 2 | 2 | 2 | |

**TAXES**

| | Current | Y |
|---|---|---|
| Fed Withholding | 299.02 | 5,649 |
| Medicare | 42.55 | 887 |
| Social Security | 181.94 | 3,561 |
| NY Withholding | 152.82 | 2,997 |
| NYC Withholding | 96.85 | 1,850 |

**BEFORE TAX DEDUCTIONS**

| | Current | YTD |
|---|---|---|
| ERS Retirement Before Tax | 93.07 | 1,683.61 |
| Regular Before Tax Health | 167.75 | 3,355.00 |

**AFTER TAX DEDUCTIONS**

| | Current | Y |
|---|---|---|
| PEP Member | 27.92 | 550 |

**Thomas P. DiNapoli**
**State Comptroller**

**CHARLENE C MCBURNIE**

| | Total Gross | Fed Taxable Gross |
|---|---|---|
| Current | 3,102.55 | 2,841.53 |
| YTD | 58,925.78 | 53,097.79 |

| Advice # | 76751206 |
|---|---|
| Advice Date | 09/11/2013 |
| Department ID | 28108 |

| Pay Start Date | 08/15/2013 |
| Pay End Date | 08/28/2013 |
| NYS EMPLID |

| Negotiating Unit | 05 |
| Retirement System | ERS |

**Net Pay**    **2,042.92**

Pay Rate    55,622.00

**EARNINGS**

| | Current Hrs/Days | Earnings | YTD Hrs/Days | Earnings |
|---|---|---|---|---|
| Regular Pay Salary Employee | | 2,133.44 | | 40,909.12 |
| Geographic Pay | | 646.66 | | 12,286.92 |
| Inconvenience Pay - Full | | 22.05 | | 418.95 |
| Location Pay | | 116.67 | | 2,205.55 |
| Shift Differential | | | | 5,498.09 |
| 12-13 "PEF DRP -1.847% | | 184.11 | | -592.53 |

**TAX DATA**

| | Federal | State | NYC | Yonkers |
|---|---|---|---|---|
| Marital Status | M | M | M | |
| Allowances | 2 | 2 | 2 | |
| Addl. Amt. | | | | |

**TAXES**

| | Current | YTD |
|---|---|---|
| Fed Withholding | 299.02 | 5,550.87 |
| Medicare | 42.55 | 795.16 |
| Social Security | 181.95 | 3,399.44 |
| N.Y. Withholding | 152.82 | 2,844.52 |
| NYC Withholding | 94.35 | 1,785.85 |

**BEFORE TAX DEDUCTIONS**

| | Current | YTD |
|---|---|---|
| ERS Retirement Before Tax | 93.07 | 1,740.76 |
| Regular Before Tax Health | 167.79 | 3,187.25 |

**AFTER TAX DEDUCTIONS**

| | Current | YTD |
|---|---|---|
| PEF Member | 27.92 | 522.19 |

September 11, 2013

Advice No.  **76751206**

Deposited in the Account(s) of    CHARLENE C MCBURNIE

**NON-NEGOTIABLE**

**Direct Deposit Distribution**    Account Number(s) not displayed to protect your privacy

| Transit # | Account Type | Deposit |
|---|---|---|
| 124003116 | Checking | 2,042.92 |
| | | |
| Total | | 2,042.92 |

**NET DISTRIBUTIONS**

| Advice # 76751206 | 2,042.92 |
|---|---|
| Check # | |
| Total | 2,042.92 |

REMOVE SIDE EDGES FIRST    THEN FOLD, CREASE AND TEAR THIS STUB ALONG PERFORATION